[S. F. No. 12855.   In Bank.—August 6, 1928.]

WESTLAKE MERCANTILE FINANCE CORPORATION (a Corporation), Appellant, v. CHAS. A. MERRITT et al., Copartners, etc., Respondents.

George H. Woodruff, Woodruff, Musick, Pinney & Hartke for Appellant.

Elmer D. Jensen and H. A. Blanchard for Respondents.

PRESTON, J.—On April 30, 1925, under the trade name of Aristocrat Distributing Company, one J. B. Vallen entered into a contract in writing with Chas. A. Merritt and Chas. A. Parlier, a copartnership, doing business under the

name of Merritt and Parlier, with reference to the sale and delivery by the former to the latter of a certain number of dishwashing machines. The contract need not here be set out other than to state that it was never fulfilled on the part of the Aristocrat Distributing Company, and there is no pretense that its covenants were observed. At the time of the making of the contract, and as a part of the transaction, Merritt and Parlier accepted two drafts or trade acceptances drawn by the Aristocrat Distributing Company, payable to themselves, alike except as to date of maturity, for $420 each, and payable sixty and ninety days after date, respectively. The material part of the earliest of these acceptances is here set forth:

"No. ——, Los Angeles, Calif. 4/30, 1925, date of sale. $420 to Merritt & Parlier, San Jose, Calif., on June 30th, 1925. Pay to the order of ourselves at Los Angeles, Calif., the Sum Of Four Hundred Twenty and 00/100 Dollars. The obligation of the acceptor hereof arises out of the purchase of goods from the drawer, maturity being in conformity with original terms of purchase. Accepted at San Jose, Cal. Dealer's Town on 4/30, 1925, Date of Order. Payable thru Security State Bank, San Jose, Cal., Dealer's Bank. Merritt & Parlier, Trade Name of Acceptor. By Chas. A. Merritt, Authorized Acceptor. Aristocrat Distributing Co., J. B. Vallen."

Plaintiff, alleging itself to be a holder in due course (Civ. Code, sec. 3133) of these instruments, sued the defendants as acceptors thereof for the amounts specified therein. Defendant copartnership, pleading the non-negotiability of said instruments introduced and proved an uncontradicted defense to said obligations unless plaintiff can be said to be an innocent purchaser thereof for value. Plaintiff showed a payment of $786.90 for said instruments and that it was ignorant of all infirmity in them. The whole question turns upon the negotiability or non-negotiability of said drafts and this question must be determined from the face of the instruments themselves. (*International Finance Co.* v. *Northwestern Drug Co.*, 282 Fed. 920.) The question is further refined by the construction to be placed upon the above clause, reading: "The obligation of the acceptor hereof arises out of the purchase of goods from the drawer, maturity being in conformity with original terms of pur-

chase.'' In other words, is said clause the expression of a contingency as to the maturity of the acceptances or does it merely refer to the consideration for which they were given? Particularly, does the expression ''maturity being in conformity with original terms of purchase'' refer to the date set up in the body of the trade acceptances or does it refer to the underlying contract between the parties? It will be observed that these acceptances were made payable to the drawers themselves. The question further arises: For what reason were these paragraphs inserted? Without them the instruments are perfect trade acceptances, negotiable in form in every respect. If these paragraphs were not intended to make the collateral agreement a part of the instruments, then they are a fraud upon the acceptors, who had a right to believe that they would mature only as in said contract provided.

We are fortunately not without assistance in the proper construction of these instruments, for the identical question was presented to the highest courts in both the states of Minnesota and Texas. It seems that the representatives of this patented article, the Aristo dishwashing machine, have in other states been long on promises, short on performances and quick on negotiations of the obligations executed by the credulous and unwary merchants. In Minnesota, in the case of *Heller* v. *Cuddy,* 172 Minn. 126 [214 N. W. 924] the court held the above paragraph to be ''a statement of the transaction which gives rise to the instrument'' (Civ. Code, sec. 3084), saying: ''So there is no ground for the contention that this statement in the acceptances put the plaintiffs upon inquiry concerning the terms of the underlying contract of purchase or its status at the time being with respect to performance or breach by the parties thereto. The situation is very different from that presented by an instrument which by reference makes another and underlying contract a part of itself and so becomes subject to its terms. That was the case in *King Cattle Co.* v. *Joseph,* 158 Minn. 481 [198 N. W. 798, 199 N. W. 437].''

It will be seen from the above quotation that if the instruments here under consideration make the underlying contract a part of themselves, their negotiability is thereby destroyed. As above intimated, we are of the opinion that the said paragraph does make the underlying contract a

part of said instruments for the purpose of determining the maturity date thereof, which may be different from that set forth in said instruments themselves. In this connection we are constrained to disagree with the opinion announced in the above-quoted case. We are in accord, however, with the reasoning set forth in *Lane Co.* v. *Crum* (Tex.), 291 S. W. 1084, which is also a case involving the identical language here under consideration. In that case there was in the court of civil appeals a majority opinion in accord with the Minnesota holding, to which there was a dissenting opinion by Mr. Justice Stanford. The supreme court, however, adopted the reasoning of Mr. Justice Stanford, in the following language:

"We agree with the conclusion reached by Associate Justice Stanford in his dissenting opinion as to the legal effect of the clause just quoted. In our opinion the clause has effect to render the trade acceptances non-negotiable under the law merchant as well as under the Negotiable Instruments Act (Vernon's Ann. Civ. St. 1925, arts. 5932–5946). The obligation of the acceptor, according to the terms of said clause, arises not from the instruments themselves, but from a collateral transaction. For an instrument to be negotiable, the obligation of the maker must arise exclusively from the instrument. No obligation arising from a collateral transaction can be imported into the terms of the instrument without destroying the negotiability of the instrument. (8 Corpus Juris, pp. 113, 114.) A negotiable instrument has been termed 'a courier without luggage,' whose countenance is its passport. This apt metaphor does not fit these trade acceptances, for the reason they are laden with the equipment of a wayfarer who does not travel under safe conduct. By their express terms these instruments bear burdens whose nature must be sought for beyond the four corners of the instruments themselves. The clause in question is more than a mere 'statement of the transaction which gives rise to the instrument,' as permitted by paragraph 2, section 3, of article 5932 of the Revised Statutes. So far from being a mere descriptive reference to the transaction which gave rise to the instrument, the clause, in definite terms, points to that transaction as the source of the acceptor's obligation to pay the amount named in the instrument. The legal effect of the clause is to render the

paper subject to all the rights and equities of the parties to the collateral transaction from which the obligation of the acceptor arises. (*Parker* v. *American Exchange Bank* (Tex. Civ. App.), 27 S. W. 1072; 8 C. J. 124.)''

A similar case and a similar holding is *Continental Bank & Trust Co.* v. *Times Pub. Co.,* 142 La. 209 [L. R. A. 1918B, 632, 76 South. 612], where the words ''as per contract'' appearing in an otherwise negotiable promissory note were held to qualify the unconditional promise to pay previously expressed therein. Similar words, however, were held not to destroy the negotiability of an instrument in *National Bank* v. *Wentworth,* 218 Mass. 30 [105 N. E. 626]. The courts do not differ as to the legal principle involved, but differ as to the meaning to be assigned to the language then under review. The question has been stated as follows: ''Whenever a bill of exchange or a promissory note contains a reference to some extrinsic contract in such a way as to make the bill or note subject to the terms of that contract, as distinguished from a reference importing merely that the extrinsic agreement was the origin of the transaction or constitutes the consideration of the bill or note, the negotiability of the instrument is destroyed.'' See, to this effect, *Northwestern Nat. Ins. Co.* v. *Southern States etc. Co.,* 20 Ga. App. 157 [93 S. E. 157].

The principle has again been stated that by the law-merchant one of the principal elements of negotiability is certainty of payment, and any words of the instrument rendering payment conditional or uncertain destroy it as a negotiable instrument. (*Greenbrier Valley Bank* v. *Bair,* 71 W. Va. 684 [77 S. E. 274].) In our own code (sec. 3085, Civ. Code) it is provided: ''An instrument payable upon a contingency is not negotiable, and the happening of the event does not cure the defect.'' Somewhat in line with this reasoning is the case of *Glendora Bank* v. *Davis et al., ante,* p. 220 [267 Pac. 311], where the court held the following language to destroy the negotiability of the instrument: ''This note is given in payment of merchandise and is to be liquidated by payments received on account of sale of such merchandise.''

The doctrine of such cases as *Flood* v. *Petry,* 165 Cal. 309 [46 L. R. A. (N. S.) 861, 132 Pac. 256], and *Pratt* v.

*Dittmer*, 51 Cal. App. 512 [197 Pac. 365], which relates to cases of transfer prior to failure of consideration in executory contracts, is, in view of the construction above announced, not here involved. This conclusion renders also unnecessary a discussion of the question of the sufficiency of the evidence to support the finding of the court that plaintiff had actual knowledge of the infirmity of these instruments.

The judgment is affirmed.

Curtis, J., Richards, J., Shenk, J., Seawell, J., Waste, C. J., and Langdon, J., concurred.