FIRST NATIONAL BANK, STATESVILLE, NORTH CAROLINA, Appellant, v. POWER EQUIPMENT COMPANY, Appellee.

No. 40495.

NOVEMBER 18, 1930.

*Maxwell & Ryan* and *Lehan T. Ryan*, for appellant.

*Brammer, Brody, Charlton & Parker*, for appellee.

154

FAVILLE, J.—The Turner Manufacturing Company is located in Statesville, North Carolina. The Power Equipment Company is located in Des Moines. On December 1, 1928, the Equipment Company executed and delivered to the Manufacturing Company a certain trade acceptance, which is in words and figures as follows:

"No. 394                                    Statesville, N. C. 12/1/1928
                                      " (City of Drawer)      (Date)
"To Power Equipment Company, Des Moines, Iowa.
"On (Date of Maturity) March 1, 1929, Pay to the order of (Name of Payee) C. H. Turner Mfg. Co. Twelve Hundred Eighty-five and 34/ . . . . Dollars ($1,285.34)
        "The obligation of the accepter hereof arises out of the purchase of goods from the drawer, maturity being in conformity with the original terms of the purchase.
"Accepted at Des Moines, Iowa, (Date) on December 1, 1928.
"Payable at (Name of Bank) Des Moines Nat'l Bank
                              "C. H. Turner Mfg. Company
                              (Signature of Drawer)
                              "D. C. Ritchie.
"Power Equipment Company, by O. R. Beach, Cashier."

On the reverse side thereof appears the following indorsement: "C. H. Turner Mfg. Company, by D. C. Ritchie, Sec'y."

Before March 1, 1929, the Turner Manufacturing Company duly indorsed said trade acceptance to the appellant bank, which was a purchaser thereof in due course. The trade acceptance was presented for payment at the Des Moines National Bank, where by its terms it was made payable, on March 1, 1929, and was protested for nonpayment. This action is brought to recover the amount due on said trade acceptance.

I. The first question for our determination is whether or not the trade acceptance is a negotiable instrument. If it is, then the court erred in sustaining appellee's motion for a directed verdict. It is to be observed that the trade acceptance contains the following sentence:

"The obligation of the accepter hereof arises out of the purchase of goods from the drawer, maturity being in conformity with the original terms of the purchase."

Two clauses are embraced in this sentence, which are separated by a comma. The first clause is as follows: "The obligation of the accepter hereof arises out of the purchase of goods from the drawer." This clause is one which is frequently inserted in trade acceptances.

Section 9463, Code, 1927, which is a part of the Negotiable Instruments Act, provides in part as follows:

"An unqualified order or promise to pay is unconditional within the meaning of this chapter, though coupled with: * * *

"2. A statement of the transaction which gives rise to the instrument."

Under this provision of the Uniform Negotiable Instruments Act, such a clause does not render the instrument nonnegotiable. *Mercantile Protective Bureau v. Specht*, 58 N. D. 239 (225 N. W. 794) ; *Wakem v. Schneider*, 192 Wis. 528 (213 N. W. 328) ; *McCornick & Co. v. Gem State Oil & Prod. Co.*, 38 Ida. 470 (222 Pac. 286) ; *Coopersmith v. Maunz*, 227 App. Div. 119 (237 N. Y. Supp. 1).

II. Does the clause "maturity being in conformity with the original terms of the purchase" render the instrument nonnegotiable? This identical clause in a trade acceptance has been the subject of consideration by three courts, so far  as we are advised. In *Heller v. Cuddy*, 172 Minn. 126 (214 N. W. 924), the Supreme Court of Minnesota, considering this clause, said:

"Each of the acceptances contained this statement: 'The obligation of the acceptor hereof arises out of the purchase of goods from the drawer, maturity being in conformity with original terms of purchase.' By reason of G. S. 1923, Section 7046 (N. I. L. Section 3), the promise of a negotiable instrument is not made conditional, and its negotiability is not destroyed by 'a statement of the transaction which gives rise to the instrument.' Such a statement is all that was incorporated in these acceptances. So there is no ground for the contention that this statement in the acceptances put the plaintiffs upon inquiry concerning the terms of the underlying contract of purchase or its status at the time being with respect to performance or breach by the parties thereto. The situation is very different from that presented by an instrument which by

reference makes another and underlying contract a part of itself, and so becomes subject to its terms. That was the case in *King Cattle Co. v. Joseph*, 158 Minn. 481, 198 N. W. 798, 199 N. W. 437.''

In *Lane Co. v. Crum* (Tex.), 291 S. W. 1084, the Commission of Appeals of Texas considered a trade obligation containing the clause under consideration, and the court said:

''In our opinion the clause has effect to render the trade acceptances nonnegotiable under the law merchant, as well as under the Negotiable Instruments Act. * * * The obligation of the acceptor, according to the terms of said clause, arises not from the instruments themselves, but from a collateral transaction. For an instrument to be negotiable, the obligation of the maker must arise exclusively from the instrument. No obligation arising from a collateral transaction can be imported into the terms of the instrument without destroying the negotiability of the instrument. 8 Corpus Juris, pp. 113,114. A negotiable instrument has been termed 'a courier without luggage,' wnose countenance is its passport. This apt metaphor does not fit these trade acceptances, for the reason they are laden with the equipment of a wayfarer who does not travel under safe conduct. By their express terms, these instruments bear burdens whose nature must be sought for beyond the four corners of the instruments themselves. The clause in question is more than a mere 'statement of the transaction which gives rise to the instrument,' as permitted by Paragraph 2, Section 3, of Article 5932 of the Revised Statutes. So far from being a mere descriptive reference to the transaction which gave rise to the instrument, the clause, in definite terms, points to that transaction as the source of the acceptor's obligation to pay the amount named in the instrument. The legal effect of the clause is to render the paper subject to all the rights and equities of the parties to the collateral transaction from which the obligation of the acceptor arises.''

In *Westlake Merc. Fin. Corp. v. Merritt*, 204 Cal. 673 (269 Pac. 620), the Supreme Court of California considered a trade acceptance containing the clause in question here. The court said:

''In other words, is said clause the expression of a contingency as to the maturity of the acceptances, or does it merely re-

fer to the consideration for which they were given? Particularly, does the expression 'maturity being in conformity with original terms of purchase' refer to the date set up in the body of the trade acceptance, or does it refer to the underlying contract between the parties? It will be observed that these acceptances were made payable to the drawers themselves. The question further arises: For what reason were these paragraphs inserted? Without them the instruments are perfect trade acceptances, negotiable in form in every respect. If these paragraphs were not intended to make the collateral agreement a part of the instruments, then they are a fraud upon the acceptors, who had a right to believe that they would mature only as in said contract provided.''

The court reviewed the case of *Heller v. Cuddy*, supra, and also the case of *Lane Co. v. Crum*, supra, and said:

''The courts do not differ as to the legal principle involved, but differ as to the meaning to be assigned to the language then under review. * * * The principle has again been stated that by the law merchant one of the principal elements of negotiability is certainty of payment, and any words of the instrument rendering payment conditional or uncertain destroy it as a negotiable instrument.''

The conclusion was reached that the instrument was nonnegotiable.

We are disposed to acquiesce in the conclusion announced by the courts of Texas and California, even though it differs from that of the Supreme Court of our neighboring state of Minnesota, for whose opinions we entertain the highest respect.

It is contended that the clause in question does no more than verify and reiterate the date of payment that is set forth in the written instrument. By its terms the instrument is made payable on a certain date, to wit, March 1, 1929. The clause in question declares that the maturity of said instrument is ''in conformity with the original terms of the purchase.'' If this clause means no more than to reaffirm that the original terms of purchase fixed the due date of payment the same as the date stated in the trade acceptance, then it may be that the clause, being a mere reiteration and reaffirmation of the due date, would not render the instrument nonnegotiable. So construed, the clause would be the

merest surplusage. It would be equivalent to saying only that "this instrument is due March 1st, and the original terms of the purchase make it due March 1st."

We are constrained to hold that the clause in question is subject to a broader interpretation than this. It specifically makes direct reference to the underlying contract between the parties in respect to the maturity of said instrument, and is, in effect, a limitation upon the express due date recited in the former part of the instrument. By its terms it draws the attention of an indorsee to the fact that, although the date as fixed in the instrument is March 1, 1929, the *true* maturity of said instrument is "in conformity with the original terms of the purchase." Suppose that the original terms of the purchase provided for payment on March 1, 1929, as recited in the trade acceptance, but contained a contingent clause to the effect that, if certain things had not happened by March 1st,—as, for example, the sale of a certain amount of the goods purchased,—then and in that event, the time of payment should be extended beyond March 1st. In such event, the date of maturity would clearly be uncertain, and the instrument would be nonnegotiable. Under a familiar rule, the insertion of the clause in question in the trade acceptance requires that the trade acceptance and the contract therein referred to should be construed together. The clause draws the attention of any indorsee to the fact that there is an outstanding contract executed in connection with the trade acceptance, and that the *true* maturity of the trade acceptance is set forth by such underlying contract and will conform to it, notwithstanding the recital of the due date in the trade acceptance.

This renders the trade acceptance nonnegotiable.

At this point we hold that the trial court did not err in holding that the instrument in question was nonnegotiable, and that it was subject to the defenses pleaded by the appellee.

III. The appellant sought to plead estoppel, growing out of the claim that, on January 29, 1929, the appellant wrote to the appellee as follows:

 "We have discounted for the C. H. Turner Manufacturing Co. of this City, a trade acceptance of yours for $1,285.34 dated December 1, 1928, due and payable March 1, 1929, at Des Moines National Bank. We are writing you

now in order that you may know where this acceptance is, and that you may be prepared to take care of the same when it matures.''

It is the contention of the appellant that the appellee made no reply to this letter, and that, because of the silence of the appellee, the appellant was led to believe that the appellee would pay said trade acceptance at its maturity, and that appellee is estopped from setting up or claiming any infirmity in said instrument, and is deemed to have waived the same. The allegations of the appellant's reply were quite insufficient to plead an estoppel. The mere notification to the appellee that the appellant had acquired the instrument by purchase did not place any duty upon the appellee to reply thereto or to advise the appellant of any defense it might have to said instrument.

There is an allegation in the reply that the payee, Turner Manufacturing Company, *after maturity* of the trade acceptance, became financially embarrassed, and unable to pay its debts; but that fact, if it be a fact, could not be made the basis of an estoppel growing out of the failure of the appellee to respond to the notification of the appellant that it had acquired said trade acceptance.

Furthermore, the evidence tends to show that, after the maturity of the trade acceptance and the protest of the same, the Manufacturing Company had money on deposit with the appellant bank in excess of the amount of said trade acceptance.

We fail to find in the record any basis whatever for the appellant's claim of estoppel. The trial court did not err in directing a verdict in behalf of the appellee upon the record made, it affirmatively appearing that the appellee had a good defense against the said written instrument, and, the same being non-negotiable, said defense was available to the appellee.

The judgment of the district court is—*Affirmed.*

MORLING, C. J., and EVANS, KINDIG, and GRIMM, JJ., concur.