Opinion by
 

 Cunningham, J.,
 

 This is an action in assumpsit by the indorsee holder of a trade acceptance against the acceptor: Defendant, Harry J. Jordan, Jr., filed an affidavit of defense raising questions of law which were decided in his favor by the court below. Thereafter judgment was entered for defendant when plaintiff declined to avail itself of the opportunity afforded it "to amend its statement of claim so as to set forth the entire contractual relations, if any, existing by and between” the drawer payee and the defendant acceptor.
 

 Plaintiff relied upon the following averments as constituting its cause of action. On May 23, 1938, defendant accepted for payment a trade acceptance drawn upon him by Fotolabs, Inc., which read:
 

 "No. May 23, 1938
 

 TRADE Beaver, Pa.
 

 ACCEPTANCE To Harry J. Jordan, Jr.
 

 On September 7, 1938 Pay to the order of FOTOLABS, INC. One hundred ninety-eight and 72/100 Dollars (f198.72)
 

 Accepted at Beaver, Pa., on May 23, 1938.
 

 Payable at Beaver Trust Co.
 

 City Beaver State Pa. Firm
 

 By Harry J. Jordan, Jr.
 

 FOTOLABS, INC.
 

 By B. J. Zeeman Treas.
 

 The obligation of the acceptor hereof arises out of the purchase of goods from the drawer, maturity being in conformity with the original terms of purchase.
 

 
 *168
 
 Endorsed:
 

 FOTOLABS, INC.
 

 By
 

 B. J. Zeeman Treas.
 

 For Collection
 

 STATE TRADING CORPORATION.
 

 PAY TO THE ORDER OF ANY BANK BANKER OR TRUST CO
 

 All prior Endorsements Guaranteed
 

 JUN 22 1938
 

 THE CHASE NATIONAL BANK of the city of New York
 

 1-74 W S Moorhead, VP & Cashier
 

 ENDORSEMENT CANCELED
 

 Jul 10 1938 Chase National Bank
 

 No. 32.
 

 Pay to the order of
 

 ANY BANK BANKER OR TRUST CO
 

 All prior Endorsements Guaranteed
 

 Aug 30 1938
 

 THE CHASE NATIONAL BANK of the city of New York
 

 1-74 W H Moorhead, VP & Cashier
 

 Endorsement Canceled
 

 Sept 8 1938
 

 Chase National Bank.”
 

 On June 10, 1938, prior to the maturity of the instrument, Fotolabs, Inc. indorsed it to plaintiff, in good faith, for value and without notice of any defenses thereto. When the trade acceptance was presented at its maturity for payment at the bank named therein, the defendant refused payment.
 

 The court below sustained defendant’s contention that the statement of claim was insufficient in law on the ground that the trade acceptance was nonnegotiable
 
 *169
 
 and that plaintiff was obliged to plead tbe entire contractual relations, if any, between Fotolabs, Inc. and defendant. Its conclusion that tbe trade acceptance was not a negotiable instrument was based upon the words appearing thereon wbicb read: “Tbe obligation of tbe acceptor hereof arises out of tbe purchase of goods from tbe drawer, maturity being in conformity with tbe original terms of purchase.”
 

 Plaintiff contends this notation does not render tbe promise to pay conditional, that it is merely a statement of tbe transaction wbicb gave rise to tbe instrument, not impairing its negotiability.
 

 On tbe other band, defendant insists that this notation qualifies tbe trade acceptance and destroys its negotiability. He also contends that even if it were negotiable, tbe judgment in his favor should be sustained, because tbe trial court, in tbe exercise of its discretion, was justified in directing plaintiff to plead further particulars by attaching a full copy of tbe contract, or suffer judgment in favor of defendant.
 

 But scant consideration need be given the proposition that tbe action of tbe court below should be sustained as being within its discretion, regardless of tbe negotiability of tbe trade acceptance. If tbe notation does not affect its negotiability, tbe statement of claim clearly sets forth a
 
 prima facie
 
 case and is not lacking in particulars. If negotiable, tbe trade acceptance was self-sufficient, and no obligation rested upon plaintiff to aver tbe transaction giving rise to it. Conversely, if tbe notation rendered tbe trade acceptance nonnegotiable, plaintiff would be bound to plead tbe original terms of purchase, or, if in writing, attach a copy of tbe agreement pursuant to tbe provisions of Section 5 of the Practice Act of May 14, 1915, P. L. 483, 12 PS §386. In other words, if tbe effect of the notation is to incorporate, by reference, the terms of tbe original purchase, thereby constituting them a condition of tbe
 
 *170
 
 obligation to pay, the instrument would be nonnegotiable. Under such circumstances, plaintiff would be required to plead the entire contract. Consequently, the sole question here involved is whether the trade acceptance was negotiable.
 

 We have had two cases in this court in each of which the action below was based upon a trade acceptance. In one,
 
 Traders Security Company v. Kalil,
 
 107 Pa. Superior Ct. 215, 162 A. 499, the instrument bore a notation reading: “The obligation of the acceptor hereof arises out of the purchase of goods from the drawer.” It was contended by the defendant that the promise was not “an unconditional promise to pay” and the instrument was therefore not negotiable. Citing Section 3 of the Uniform Negotiable Instruments Act of May 16, 1901, P. L. 194, 56 PS §3, providing, inter alia, that “an unqualified order or promise to pay is unconditional, within the meaning of [the] act, though coupled with a statement of the transaction which gives rise to the instrument,” we held, in an opinion by Parker, J., (now Mr. Justice Parker of the Supreme Court), that the placing of that notation upon the trade acceptance did not impair its negotiability in this state. This view represents the overwhelming weight of authority in other jurisdictions. See Brannan’s Negotiable Instruments Law, Sixth Ed. (1938), p. 158; and Paton’s Digest of Legal Opinions, (1940), Yol. 1, p. 50. In the case at bar, therefore, the first part of the notation appearing on the trade acceptance furnishes no support for a finding that it was nonnegotiable. If the court below was correct in holding it nonnegotiable, it could only be by reason of the additional portion of the notation, reading, “maturity being in conformity with the original terms of purchase.”
 

 The other case is
 
 Levitt v. Johnstown Office Supply
 
 Company, 103 Pa. Superior Ct. 76, 157 A. 804, in which the opinion was written by Keller, J., now President
 
 *171
 
 Judge. In it the notation on the trade acceptance was precisely the same as the notation appearing upon the instrument involved in the case now at bar. It was assumed throughout the trial and upon the appeal that the instrument was negotiable. The action was by the indorsee holder and the trial judge permitted the defendant acceptor to introduce evidence in an attempt to show that the title of the payee who negotiated the instrument to the plaintiff was defective, inter alia, because a promise had been made that the trade acceptance would not be negotiated.
 

 No question having been raised relative to the negotiability of the acceptance, the writer of the opinion treated it as a negotiable instrument, cited a number of cases establishing and defining the rights of indorsees of such instruments, and at p. 81 gave this description of the characteristics of trade acceptances:
 

 “A ‘trade acceptance’ is a recognized term. It is defined in Regulation A of the Federal Reserve Board, Section V (a) — (Aug. 1, 1930) ‘as a draft or bill of exchange, drawn by the seller on the purchaser of goods sold, and accepted by such purchaser.’ Its purpose is to make the book account liquid and permit the seller to raise money on it before it is due under the terms of sale. When so given in the purchase of goods, as the actual obligation of the acceptor, to attach a parol condition that it shall not be negotiated would not vary, but destroy, its legal effect and negotiability, as much so as an agreement that the acceptor of a bill of exchange or the maker of a promissory note should not be personally liable for its payment. See
 
 Fidelity T. & T. Co. v. Garland et
 
 al., 291 Pa. 297;
 
 Bank of Hooversville v. Sager son et
 
 al., supra [283 Pa. 406]. Such a condition should be expressed in the instrument itself, or its omission shown to have been procured by fraud, accident or mistake:
 
 Speier v. Michelson,
 
 supra [303 Pa. 66]. It strikes at the very heart of negotiable paper,
 
 *172
 
 and attempts by a parol condition to transform it into nonnegotiable paper. When given as an actual obligation in the purchase of goods such an allegation does not come within the term used in section 55 of the Negotiable Instruments Act, ‘or when he negotiates it in breach of faith or under such circumstances as amount to a fraud7:
 
 Vergil v. Johnson,
 
 204 N. W. 36 (Minn.).77
 

 In view of the fact that the question of negotiability was neither raised nor specifically discussed in the Levitt case, and because of its importance due to the increasing favor with which trade acceptances are now regarded, we shall now dispose of the controlling issue in the present case, viz., whether the placing of the above quoted notation upon the face of the instrument in suit destroyed its negotiability?
 

 “In recent years a concerted movement to reintroduce the trade acceptance has been made, and its use is strongly advocated by the American Bankers Association, the National Association of Credit Men, and the Chamber of Commerce of the United States77: Williston on Negotiable Instruments, 7th Printing (1940), p. 276. This effort to encourage their use is likewise commented upon in Paton’s Digest, supra, p. 44.
 

 An examination of the decisions in other states demonstrates a direct conflict of authority upon this important commercial matter in jurisdictions where the courts have had occasion to pass upon the effect of identical phraseology in trade acceptances.
 

 The majority view, and the one adopted by the jurisdictions called upon most recently to determine the question, is that the notation we have in the case at bar does not impair negotiability. The leading case is
 
 Heller v. Cuddy,
 
 172 Minn. 126, 128, 214 N. W. 924 (1927), where the court said: “Each of the acceptances contained this statement: ‘The obligation of the acceptor hereof arises out of the purchase of goods from
 
 *173
 
 the drawer, maturity being in conformity with original terms of purchase.’ By reason of G. S. 1923, Section 7046 (N. I. L. Sec. 3), the promise of a negotiable instrument is not made conditional and its negotiability is not destroyed by (a statement of the transaction which gives rise to the instrument.’ Such a statement is all that was incorporated in these acceptances. So there is no ground for the contention that this statement in the acceptances put the plaintiffs upon inquiry concerning the terms of the underlying contract of purchase or its status at the time being with respect to performance or breach by the parties thereto. The situation is very different from that presented by an instrument which by reference makes another and underlying contract a part of itself and so becomes subject to its terms.”
 

 The same view was adopted in
 
 State Trading Corp. v. Smaldone,
 
 172 N. Y. Misc. 367, 368, 15 N. Y. S. (2d) 33 (1938).
 

 In
 
 State Trading Corp v. Rosen,
 
 9 A. (2d) 289, 290, 126 Conn. 37 (1939) the identical situation was in issue, and the court, in following the view of the Heller case, supra, said: “ ‘The reference clause is separate and distinct from the rest of the note.......There is nothing to show that it was intended to qualify the promise to pay rather than to explain merely the occasion or the circumstances of its execution. Its detachment, both physically and grammatically, from the essential parts of the note, would seem, however, to invite, as more rational, the conjecture that it was merely an explanation of the note as a whole — a memorandum to identify it by connecting its execution with an existing agreement “as per,” that is, in accordance with, or pursuant to, which it was made.’
 
 Strand Amusement Co. v. Fox,
 
 205 Ala. 183, 185, 87 So. 332, 334, 14 A. L. R. 1121. In the instant case, the time of payment was stated in the instrument, and considering that fact and
 
 *174
 
 the position of the clause in question upon the face of the instrument, the language is to be construed as a statement of the transaction which gave rise to the instrument and not as a reference to an extrinsic contract affecting the time of payment. It is as though the clause read ‘the maturity stated is in conformity with the original terms of purchase.’ The instrument was accordingly negotiable.”
 

 Again, in
 
 State Trading Corp. v. Toepfert, 23
 
 N. E. (2d) 1008 (Mass. [1939]), the court stated: “The words added to the instrument do not have the effect of incorporating into it by reference any previous written contract between the parties. No writing is mentioned. The ‘terms of purchase’ may well have rested in parol. Nor does it seem reasonable that the parties who executed in due form a written instrument for the payment of a specified sum of money on a specified day would intend by the added words to alter or destroy the otherwise plain meaning of that instrument by importing into it as controlling conditions the terms of some oral understanding by which and not by the instrument itself the obligations of the parties would be measured. A simple and reasonable explanation of this addition to such an instrument is that it was made in order that the paper might carry on its face an assurance both that it had its origin in a genuine commercial transaction and that there had been no extension of the original term of credit. It has been held in a number of cases in various jurisdictions that a statement that the obligation arose out of the purchase of goods is ‘a statement of the transaction which gives rise to the instrument’ within the meaning of section 3 of the Negotiable Instruments Law and does not affect negotiability. See cases collected in Brannan, Negotiable Instruments Law (6th Ed.), 158. The addition of the second statement, ‘maturity being in conformity with the original terms of purchase,’ merely confirms and
 
 *175
 
 does not contradict the dne date stipulated in the body of the instrument. On its face the acceptance became unconditionally due and payable on August 1, 1988. It contains nothing to the contrary by reference or otherwise.”
 

 The minority view found expression in three cases:
 
 First National Bank v. Power Equipment Co.,
 
 211 Iowa 153, 233 N. W. 103 (1930);
 
 Lane Co. v. Crum,
 
 291 S. W. 1084 (Texas, 1927);
 
 Westlake Mercantile Finance Corp. v. Merritt,
 
 204 Cal. 673, 269 Pac. 620 (1928). The Crum case has since been considered as limited in its scope, if not overruled, by
 
 Arrington v. Mercantile Protective Bureau,
 
 24 S. W. (2d) 383 (Texas, 1930). See Brannan, supra, pp. 158-9. The Westlake case is not directly in point; the trade acceptance involved contained no specific date of maturity. The ruling in all three cases has been severely criticized in Brannan, supra, p. 158; in 6 Texas Law Rev. 95, 7 Texas Law Rev. 179, 37 Yale L. Journal 382, and 29 Michigan L. Rev. 627. In speaking of the Crum case, the writer said in 6 Texas Law Rev. 95, 98: “The construction given the statement in the principal case by the Commission of Appeals is not that either of the majority of the courts or of the business world. The statement seems to be one commonly found on trade acceptances. The Federal Reserve Board Regulations require a trade acceptance, to be eligible for purchase by a federal reserve bank, to show that it is drawn by the seller on the buyer of goods sold, and to evidence the nature of the underlying transaction. This the recitation does. It indicates that the bill is drawn for merchandise sold, and not for a long outstanding debt or past due account, and the date of maturity specified in the instrument is as understood by the buyer, the drawee — all circumstances, which, even if known to the holder, do not impair his legal rights, but are significant to a prospective purchaser as to the certainty and ease of
 
 *176
 
 collection. Would tlie business man take it to mean anything more? New business men would favor a rule requiring them to study said statements with a fine eye for implied conditions.”
 

 We are of opinion that the majority view, above indicated, should be adopted in Pennsylvania. The very nature and. purpose of trade acceptances practically compel this conclusion. Unlike the ordinary promissory note, they can only arise out of contemporaneous commercial transactions. In Paton’s Digest, supra, p. 41, they are defined as follows: “A trade acceptance is a draft drawn by the seller of goods upon the buyer for the purchase price of such goods, which draft has been ‘accepted’ by the buyer. A trade acceptance properly drawn is negotiable paper, and its use results in advantages to both buyer and seller. It is, however, properly used to represent current merchandise transactions only, and is in this respect distinguished from a promissory note, which may be given for a past-due account, borrowed money, or for any other consideration. Trade acceptances are bills of exchange ‘arising out of actual commercial transactions,’ which Federal Reserve banks may discount under Section 2 of Article 13 of the Federal Reserve Act and which they may purchase in the open market under Section 1 of Article 14.”
 

 The principal function of a trade acceptance is to take the place of selling goods on an open account. The mutual advantages to seller and buyer are fully described in Williston on Negotiable Instruments, supra, p. 279.
 

 Our conclusion is that the statement of claim was sufficient in law. The question of law raised by the affidavit of defense, filed January 16, 1939, in lieu of a demurrer, should, therefore, have been decided in favor of the plaintiff.
 

 Judgment 'reversed and leave granted defendant to file a supplemental affidavit of defense to the averments
 
 *177
 
 of fact of the statement within fifteen days after the remission of the record to the court below.