*1219 OPINION.
Tkammell :
The facts were stipulated by the parties substantially as found by us above, and the only issue raised by the pleadings is whether the respondent erred in disallowing a deduction of $157,286.69 claimed by the petitioner in his tax return for 1923 on account of an alleged bad debt. The amount in question represents the balance of the indebtedness oived to the petitioner by the Ideal Power Lawn Mower Co., and Avliich was charged off the petitioner’s books in said year.
Prior to November 5, 1923, the Ideal Co. was indebted to the petitioner in the amount of $178,457.26, but by reason of the purchase and sale or exchange of the properties referred to in the contract of said date, the debt due to the petitioner by the corporation was reduced to the extent of $21,170.57, or to a balance of $157,286.69, which is the amount claimed by the petitioner for a bad debt deduction.
The respondent contends that the deduction claimed should be disallowed for two reasons — first, because the indebtedness of the corporation was gratuitously forgiven by the petitioner and constituted a contribution to its capital, and is therefore not an allowable deduction as a bad debt; and, second, for the reason that the debt was not properly ascertained to be worthless, and was not charged off because of its worthlessness, in the taxable year.
The petitioner argues that the debt was not gratuitously forgiven, but that the original amount of $178,457.26 was canceled under the contract of November 5, 1923, in consideration of the payment to the petitioner of $21,170.57, this being the difference in value of the *1220 real estate exchanged. And the petitioner further asserts that the balance of the debt was properly ascertained to be worthless and charged off in the year for which it was claimed as a deduction. We are unable to accept this viewpoint.
The petitioner was the principal stockholder of the debtor corporation, owning 23,409% shares or more than 78 per cent of the issued and outstanding stock. The contract executed by the petitioner and the corporation on November 5, 1923, and which is set out in full in our findings of fact, recites that the corporation was unable to pay its indebtedness to the petitioner and by reason thereof was unable to obtain the necessary credit for the successful operation of its business. It is further stated that the contract was executed upon the express condition that the petitioner accept the difference between the agreed valuation of the properties exchanged in full settlement of the indebtedness to him, “ thereby compromising and cancelling same.”
The evidence justifies the conclusion, we think, that the primary purpose sought to be achieved by this contract was the restoration of the corporation’s credit. It is not' difficult to comprehend the reasons which moved the petitioner to cancel the debt due him from the corporation. It manifestly was to his interest to maintain the value of the corporation’s stock, of which he owned approximately "four-fifths. He was also guarantor for the corporation on loans from banks amounting to $227,500. From the evidence before us, we can only conclude that the motivating reasons for the cancellation of his debt by the petitioner were the safeguarding of his investment in the corporation’s stock and his desire to avoid the necessity of paying the corporation’s obligations which he had guaranteed. The reduction of the debt by the amount of the difference in value between the properties exchanged was not the real consideration for the cancellation of the remaining indebtedness, but was merely an incident of the transaction.
There can be no doubt that the cancellation of the debt in the amount of $157,286.69 increased to that extent the value of the corporate assets. The corporation was thereby enriched, and it was so enriched at the expense of its chief stockholder.
The cancellation of the indebtedness, therefore, constituted a gift to the corporation or a contribution to its capital, and the indebtedness was charged off during the tax year because it had been canceled pursuant to the provisions of the contract of November 5. It is not an allowable deduction on account of a bad debt. Smith Insurance Service, Inc., 9 B. T. A. 284; T. B. Floyd, 11 B. T. A. 903.
There is also an additional ground on which we would be required to disallow the deduction claimed by the petitioner. Unless the debt was in fact worthless and was so ascertained and was charged *1221 off for that reason during the taxable year, it does not give rise to an allowable deduction. The statement of assets and liabilities of the Ideal Co. at the close of its fiscal year June 30, 1923, discloses that it had assets in the aggregate book value of $856,636.97, and liabilities, exclusive of capital stock and the indebtedness due the petitioner, in the amount of $527,017.44. Thus, the corporation had assets subject to the payment of the indebtedness due the petitioner, in the amount of $329,619.53, and the petitioner’s debt as shown by his books amounted to only $178,457.26.
The petitioner contends that the corporation’s assets could not have been sold at a forced sale for the book values, but this, even if true, we do not think is determinative of the issue. It is not shown that the book values were excessive or did not represent the true values, nor does the evidence convince us that the petitioner could not, in the taxable year, have collected a substantial portion of his debt, if not in fact all of it, if he had desired to do so.
If any substantial part of the debt was' collectible, the whole amount can not be said to have been a bad debt, and the record does not establish what portion, if any, less than the whole was uncol-lectible or worthless. Since the entire amount of the debt is claimed as a deduction, and it is not shown that the whole amount claimed was a bad debt, the deduction must be disallowed for this reason also.

Judgment will be entered for the respondent.