ESTATE OF L. W. MALLORY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

*Docket No. 33231. Promulgated February 13, 1933.*

*H. S. Snyder, Esq.*, and *M. J. Holland, Esq.*, for the petitioner.
*J. R. Johnston, Esq.*, for the respondent.

## OPINION.

Lansdon: No evidence was introduced at the trial of this cause to show that the items grouped as "traveling expenses" which petitioner claims were legal deductions from decedent's income in the years reviewed. Without some proof as to what these disbursements were for we are unable to hold that the respondent erred in rejecting them as legal deductions from income for the years to which they relate and his action in reference to them is therefore approved. *Barnett Weiss*, 3 B. T. A. 228; *E. S. Frischkorn*, 7 B. T. A. 431; *E. L. Potter*, 20 B. T. A. 252; and *Golding & Hahn Co.*, 15 B. T. A. 499.

The petitioner's next claim is that the taxpayer sustained losses in the respective amounts of $13,500 and $21,000 in the years 1923

and 1924, through the sale of capital stock in the Homer Land and Cattle Company. The record shows that the decedent was responsible for the organization of the Homer Land and Cattle Company, and that on August 24, 1923, he became the sole owner of its stock then outstanding. The corporation lost money from its beginning, and he paid its bills and loaned it money for which he was paid, in part, with stock at par, which he assigned to his son at book value, as set out in our findings of fact.

The evidence convinces us that the sales of stock made by decedent to his son in October, 1923, and November 1924, were bona fide transactions for adequate consideration and that after such dates the son was the owner of the stock in question. If the cost of the stock so disposed of is proved by the record, the petitioner is entitled to the deductions claimed. *Paul Akers Bowden*, 26 B. T. A. 1410.

The record discloses that on August 24, 1923, the decedent became the sole owner of all the outstanding stock of the corporation, to which he thereafter loaned substantial sums of money, evidenced in all instances by the promissory notes of the borrower. To the extent of $15,000 in 1923 and $35,000 in 1924, such notes were surrendered and canceled in consideration of the issuance of unissued stock of the corporation to him in the respective quantities of 150 and 350 shares, so that at November 24, 1924, he was the owner of all the outstanding stock of the corporation, except as above set out. In these circumstances we think it is clear that all the advances represented by the unpaid promissory notes of the corporation must be regarded as capital contributions and, therefore, that the stock cost the decedent $100 per share. *Howard W. Starr*, 1 B. T. A. 681; cf. *Chicago, Indianapolis & Louisville Ry. Co.*, 10 B. T. A. 1143.

The petitioner contends that all the transactions through which the decedent acquired the stock of the corporation were entered into for profit. The record discloses that the elder Mallory always took notes for advances to his son and to the corporation. The notes of the son were secured by collateral and one payment of $300 was made on that which was taken in 1923. The loans to the corporation were evidenced by promissory notes, some of which were paid in cash and the balance by the issuance of stock. Decedent was a successful business man, but like most such men he sometimes embarked on enterprises that were unprofitable. In our opinion the evidence clearly disproves that he had any intention of giving his son the various amounts which he advanced to acquire the stock of the corporation and finance its operations.

Respondent also argues that, in any event, Mallory's subsequent purchase of a like number of shares of the same stock from the cor-

poration at par, as shown in the record, brings the transactions within section 214 (a) (5), which provides that no losses shall be recognized in any sale or other disposition of shares of stock or securities where it appears that within thirty days before or after the date of such sale the taxpayer has acquired substantially identical property, etc. The evidence shows that the purchases of additional stock here considered were not made within the thirty-day limit provided for in the section above cited. It is therefore clear that such provision does not affect the issues here involved. On this issue the determination of the respondent is reversed. The decedent was entitled to deduct the amounts of $13,500 and $21,000, respectively, from his gross income in his income tax returns for 1923 and 1924.

*Decision will be entered under Rule 50.*