**O. D. BRATTON, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 12129.

United States Court of Appeals, Sixth Circuit.

Dec. 10, 1954.

Lowell W. Taylor, Memphis, Tenn. (William E. Walsh, Jr., Memphis, Tenn., on the brief), for petitioner.

I. Henry Kutz, Washington, D. C. (H. Brian Holland, Ellis N. Slack, Hilbert P.

Zarky and Karl Schmeidler, Washington, D. C., on the brief), for respondent.

Before McALLISTER, MILLER and STEWART, Circuit Judges.

STEWART, Circuit Judge.

This is a petition by the taxpayer to review a decision of the Tax Court as to his income tax liability for the year 1950. The sole question involved is whether the court erred in sustaining the Commissioner's disallowance of a worthless debt deduction claimed by the petitioner in his return for that year.

The facts as found by the Tax Court may be summarized as follows:

The petitioner has been engaged in the lumber business in Memphis for many years, operating through various partnerships and corporations. In 1946 the petitioner, together with his son-in-law and others, organized Stable Wood Products, Inc., hereinafter called the "corporation," for the purpose of manufacturing prefabricated garages. The petitioner was president and chairman of the Board of Directors of the corporation and controlled its management and operations continuously from its organization. As an integral part of his business the petitioner guaranteed to banks and other creditors the indebtedness of the various enterprises in which he was interested, and from the beginning he guaranteed the debts of the corporation, so that those dealing with the corporation considered that they were dealing with the petitioner, and extended credit to the corporation upon the strength of his guaranties.

The corporation sustained operating losses of increasing magnitude from its inception through the taxable year, 1950. In 1949, at the request of some of the major creditors of the corporation, the petitioner paid them one-third of the amounts owed them by the corporation and gave his personal notes for the remaining two-thirds, payable in two equal installments in 1950 and 1951.

In 1949 the financial condition of the corporation had grown so bad that all of its stockholders except petitioner's son-in-law transferred their stock to petitioner without consideration other than his assumption of the corporation's debts. In October, 1950, the petitioner decided that the corporation should change its activities to the manufacture of soft drink boxes, and induced one H. L. Judd, who was experienced in that field, to become general manager. In return the petitioner agreed to sell Judd one-third of his stock in the corporation for one dollar and agreed that he would make no further claim against the corporation for the amounts that he had loaned and advanced for the corporation. Judd regarded the stock as having no value, but he was hopeful that a change of management and of the product manufactured might convert the business to a profitable enterprise. At the time of the hearing before the Tax Court in 1952 the corporation was in fact operating profitably.

In 1950 the petitioner paid $15,041.71 to the corporation's guaranteed creditors, being the first installment on the notes given in 1949 to cover the guaranteed debts of the corporation incurred prior to the time the notes were executed. Petitioner claimed the amount of this payment as a business bad debt deduction in his income tax return for 1950. The Commissioner disallowed the deduction upon the ground that the petitioner had "not shown that this debt became worthless in 1950," and the Tax Court, upon the foregoing findings of fact, sustained the Commissioner's position.

In the Tax Court the Commissioner contended that the amount in question was not deductible because it was not a debt but a capital contribution, and, in the alternative, that if it was a debt, it was not deductible because it did not become worthless in the taxable year 1950 and because it was a "non-business debt." 26 U.S.C. § 23(k).

The Tax Court held that the money paid to the guaranteed creditors in 1950 was not a contribution to the capital of the corporation, and that since the guaranties were made and the notes executed

in the operation of the business in which petitioner was regularly engaged, the debt was not a "non-business debt"

However, the Tax Court did agree with the Commissioner's view that there was no debt which became worthless in 1950, reasoning that since the corporation was continuously insolvent from December 31, 1948 through 1950, "debts incurred in that year or subsequent to December 31, 1948, could not become worthless in 1950, since they were worthless when acquired."

The Tax Court's conclusion apparently rests upon its factual finding that the payment in 1950 represented debts all incurred by the corporation subsequent to December 31, 1948. Petitioner insists that this finding is clearly erroneous, since the record shows that at least some of the indebtedness covered by the 1950 payment was incurred by the corporation in 1948. In the view we take of the case, the point is probably not material, as will subsequently appear.

■ An ordinary loan which gives rise to a debt which is worthless when created or acquired cannot subsequently be deducted as a bad debt. A guaranty, however, is not such a loan. A guarantor becomes a creditor of the principal debtor only after he pays the principal debtor's indebtedness. Therefore, in the present case, the debt in question was not "acquired or created" at the time the petitioner made the guaranties or in 1949 when he executed the notes, but in 1950, when he made the payment. Only then did the corporation owe him a debt, under the agreement which the law implies on the part of the principal debtor to reimburse his guarantor.

■ A guarantor forced to pay under his guaranty will, in the nature of things, usually find that the claim he thus acquires against the principal debtor is an uncollectable one at the time it is acquired. Yet that fact alone should not stand in the way of allowing the guarantor a bad debt deduction, and it has been so held. Shiman v. Commissioner, 2 Cir., 1932, 60 F.2d 65; Hamlen v. Welch, 1 Cir., 1940, 116 F.2d 413; Daniel Gimbel, 1937, 36 B.T.A. 539.

The fact that the principal debtor was insolvent when the guaranty was extended has led to the conclusion in some cases that the guarantor had no intention of ever asserting a claim against the principal debtor should it become necessary to pay under the guaranty. Hoyt v. Commissioner, 2 Cir., 1944, 145 F.2d 634; W. F. Young, Inc. v. Commissioner, 1 Cir., 1941, 120 F.2d 159; American Cigar Co. v. Commissioner, 2 Cir., 1933, 66 F.2d 425, certiorari denied 290 U.S. 699, 54 S.Ct. 209, 78 L.Ed. 601. The true basis of the disallowance of the claimed deduction in those cases, however, is not that "the debt was worthless when acquired," but that no debt ever arose, since the entire purported guaranty transaction was in fact a donative one from the beginning. There was no such finding in the present case.

In Eckert v. Burnet, 1931, 283 U.S. 140, 51 S.Ct. 373, 75 L.Ed. 911, relied upon by the Tax Court, the cash basis taxpayer did not make a payment to the creditor under his guaranty, but merely substituted his own note for the corporation's obligation previously endorsed by him (as the present petitioner did in 1949), and claimed a bad debt deduction in the year he did so. "The petitioner 'merely exchanged his note under which he was primarily liable for the corporation's notes under which he was secondarily liable, without any outlay of cash or property having a cash value.'" 283 U.S. 141, 51 S.Ct. 374. The obvious reason for the disallowance of the deduction in the Eckert case is that no debt owing to the taxpayer had yet arisen. See Helvering v. Price, 1940, 309 U.S. 409, 60 S.Ct. 673, 84 L.Ed. 836.

We think that to the extent the decision of the Tax Court can be sustained, it must rest upon a foundation different from that there relied upon. The Tax Court found as a fact that in October, 1950, in inducing Judd to take over the management of the corporation, the petitioner voluntarily released the corporation from any claim "for the amounts

that he had loaned and advanced for the corporation." It is not clear whether the Tax Court meant by this finding that the petitioner released only his claim for payments which he had previously made to the corporation's creditors, or that he released all claims for guaranties previously given, regardless of when payments under the guaranties were made. Furthermore, the record does not show what part of the 1950 payments to the corporation's creditors was made by the petitioner before October of that year, and what part if any, was made after that time. Precise findings upon these factual questions are essential to a proper disposition of this case, as we view it.

■■ The petitioner could obviously no longer look to the corporation for reimbursement for any payments from which he voluntarily released the corporation in October, 1950. Whatever the payments may otherwise have been, we think that to the extent the petitioner released the corporation's resulting indebtedness to him, the payments were converted into a capital contribution. The Tax Court found that the petitioner's payment to the corporation's creditors was not itself a contribution to the corporation's capital. The court, however, did not expressly consider the effect of the petitioner's voluntary cancellation of the corporation's resulting obligation to him in October, 1950. It is well recognized that where a shareholder in a corporation which is indebted to him gratuitously forgives the debt, the transaction generally amounts to a contribution to the capital of the corporation. Carroll-McCreary Co., Inc. v. Commissioner, 2 Cir., 1941, 124 F.2d 303; see Treasury Regulations 118, § 39.22(a)–13.

■ A worthless debt implies the existence of an obligation which cannot be collected. Here, to the extent that the obligation itself was extinguished by the voluntary act of the petitioner, there remained no debt at all. On the other hand, to the extent, if any, that the corporation's obligation to the petitioner, was not released by the petitioner, the deduction should be allowed.

■ Petitioner contends, in the alternative, that to the extent he is not entitled to a bad debt deduction, the deduction should be allowed as an uncompensated business loss under § 23(e) of the Internal Revenue Code. That which is a bad debt cannot be a business loss; subsections (e) and (k) of § 23 of the Internal Revenue Code are mutually exclusive. Spring City Foundry Co. v. Commissioner, 1934, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200. "But the petitioner is not precluded from arguing both theories in the hope of showing the applicability of one of them to the facts presented." Lidgerwood Manufacturing Company, No. 141, 1954, 22 T.C. 1152.

The courts have allowed the guarantor a loss rather than a bad debt deduction where the prime obligor was no longer in existence at the time the guarantor was called upon to pay. Fox v. Commissioner, 2 Cir., 1951, 190 F.2d 101. This result is justified upon the obvious premise that there can be no debt when there is no debtor. On the other hand, cases allowing the guarantor a loss rather than a bad debt deduction where the principal debtor was still in existence are difficult to reconcile with Spring City Foundry Co. v. Commissioner, supra. Pollak v. Commissioner, 3 Cir., 1954, 209 F.2d 57; Allen v. Edwards, D.C.M.D.Ga.1953, 114 F.Supp. 672.

■ In any event our conclusion that the transaction in question amounted to a capital contribution is a complete answer to petitioner's argument that he suffered a deductible loss under § 23(e) of the Internal Revenue Code. What is a contribution to capital is not a loss at the time it is made. Loss, if any is eventually realized, will occur at the time petitioner's shares in the corporation are sold or become totally worthless. Lidgerwood Manufacturing Company, supra.

This case is remanded to the Tax Court for findings as to the scope of the release in October, 1950, and for further proceedings in accordance with this opinion.