**LIDGERWOOD MANUFACTURING CO., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 31, Docket 23533.

United States Court of Appeals Second Circuit.

Argued Dec. 6, 1955.

Decided Jan. 17, 1956.

Francis E. H. Davies, for petitioner Fred R. Tansill and Goodwin, Rosenbaum, Meacham & White, Washington, D. C., of counsel.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Hilbert P. Zarky and Frank E. A. Sander, Sp. Assts. to the Atty. Gen., for respondent.

Before SWAN, FRANK and LUMBARD, Circuit Judges.

SWAN, Circuit Judge.

The question presented by this appeal is whether the Tax Court erred in hold-

ing that the taxpayer's cancellation in 1946 of debts owed to it by two subsidiary corporations, whose stock was wholly owned by it, constituted capital contributions to the subsidiaries and precluded deduction as worthless debts of the amounts, aggregating $650,000, so cancelled. Disallowance of the bad debt claims resulted in the deficiency complained of.

The findings of fact and opinion of the Tax Court are reported in 22 T.C. 1152. For present purposes an abbreviated statement will suffice. In 1946 the petitioner, a New York corporation, had two wholly owned subsidiary corporations. They will be referred to respectively as Superior and Dutchess. On October 31, 1946 Superior owed its parent corporation some $411,000, and on that date the parent voluntarily canceled $300,000 of the indebtedness, at the same time receiving 3500 shares of Superior's common stock. On three occasions during 1946, the petitioner likewise cancelled debts owed to it by Dutchess and received in exchange shares of the debtor's common stock. Each of the debts at the date when cancelled was uncollectible. Appropriate entries in the books of the respective corporations were made to reflect reduction in indebtedness of the subsidiaries and increase in capital investment by the parent. The purpose of the debt cancellations was to enable the subsidiaries to obtain needed bank loans,

which they did obtain after the cancellations. They also obtained further advances from the petitioner, which have been repaid in full. The parent and both subsidiaries filed separate tax returns in 1946. The petitioner's return, as originally filed, reported a net income, showed an increase during the year in the amount invested in its subsidiaries, and claimed no deduction for bad debts. By amendments a bad debt deduction of $650,000 was claimed.

Some of the facts above stated are "assumed" by the Tax Court instead of expressly found.[1] On the basis of the facts found and assumed the Tax Court held that the petitioner made a capital contribution of $300,000 to Superior in 1946 and of $350,000 to Dutchess in that year. We think the decision correct.

The cancellation of indebtedness by a creditor may be either a gift, a contribution to capital, if the debtor be a corporation, or a sale of a claim for less than its face value. Determination of which category a particular transaction falls into depends on the facts of the particular case, and largely on the intent of the creditor.[2] This court and others have held that cancellation of a debt owed by a corporate debtor to a stockholder of the debtor does not constitute taxable income to the debtor but is a capital contribution by the creditor.[3] For many years the Treasury Regulations have so provided.[4] It is true, as the petitioner

1. The opinion of Judge Rice states:
"Assuming the advances to be loans when made, which petitioner expected to be fully repaid and assuming also that the sums due were uncollectible when canceled, the petitioner's voluntary cancellation of the 'debts' converted them into a capital contribution. * * * "

2. See Commissioner of Internal Revenue v. Jacobson, 336 U.S. 28, 50, 69 S.Ct. 358, 369, 93 L.Ed. 477: "In the absence of proof to the contrary, the intent of the seller [creditor] may be assumed to have been to get all he could for his entire claim."

3. Commissioner v. Auto Strop Safety Razor Co., 2 Cir., 74 F.2d 226, cited with apparent approval in Helvering v. American Dental Co., 318 U.S. 322, 328, 63

S.Ct. 577, 87 L.Ed. 785; Carroll-McCreary Co. v. Commissioner, 2 Cir., 124 F.2d 303; Crean Bros. v. Commissioner, 3 Cir., 195 F.2d 257; Bratton v. Commissioner, 6 Cir., 217 F.2d 486; Olds v. Commissioner, 18 B.T.A. 1215; additional citations may be found in the Tax Court's opinion, 22 T.C. 1152.

4. Treasury Regulations 111, promulgated under the Internal Revenue Code of 1939, provides:
"Sec. 29.22(a)–13. Cancellation of Indebtedness—In general. * * * In general, if a shareholder in a corporation which is indebted to him gratuitously forgives the debt, the transaction amounts to a contribution to the capital of the corporation to the extent of the principal of the debt. * * * "

says, that the Regulations, as well as the cited authorities, with the exception of the Bratton and Olds cases, were directed to determining whether the debtor received taxable income by reason of cancellation of the indebtedness. But we cannot see the relevancy of this alleged distinction. If the debtor has received a contribution to capital, the creditor must have made the contribution. Consistency requires that both parties treat it alike. Whether the creditor's investment will result in profit or loss to the investor cannot be determined forthwith. Loss, if any is eventually realized, occurs when the investment is closed out; that is, when the shares of stock of the debtor are sold or become worthless.[5]

The petitioner contends that since the debts were assumed to be uncollectible, the cancellation of worthless debts and the issuance of stock therefor were meaningless formalities. We disagree. When a creditor cancels a debt in return for stock, he gives up the right to repayment, however prosperous the debtor may become, and he acquires a right to dividends from future prosperity. If he owns less than all of the debtor's stock, the issuance of additional shares increases his share of possible dividends. If, as here, the creditor owns all the debtor's stock, his share is not increased but he has retained his 100 per cent right to future dividends, and, if the cancelled debts had any value whatever, to that extent he has increased his capital investment. It is not entirely clear what the Tax Court meant by its assumption that the debts were "uncollectible." Although the petitioner had contended that the subsidiaries were insolvent both before and after the cancellations, no finding of insolvency was made. But even on the assumption that the debtors were insolvent after as well as before the cancellations, wiping out the debts was a valuable contribution to the financial structure of the subsidiaries.[6] It enabled them to obtain bank loans, to continue in business and subsequently to prosper. This was the avowed purpose of the cancellations. Where a parent corporation voluntarily cancels a debt owed by its subsidiary in order to improve the latter's financial position so that it may continue in business, we entertain no doubt that the cancellation should be held a capital contribution and preclude the parent from claiming it as a bad debt deduction. That the petitioner intended it to be a capital contribution is clear, for it not only received stock in exchange for the cancellations but made entries in its books to reflect the transaction as such. Bratton v. Commissioner, 6 Cir., 217 F.2d 486 is an authority in point. We agree with it. Giblin v. Commissioner, 5 Cir., 227 F.2d 692, may be distinguishable on the facts; in so far as the opinion expresses views opposed to our own we respectfully disagree with them.

The taxpayer's alternative argument that it was entitled to a deduction for partially worthless bad debts, business losses or business expenses was not considered by the Tax Court, nor need we consider it. Decision affirmed.

---

5. See Estate of Mallory v. Commissioner, 27 B.T.A. 750. This was also the view of Judge Rice in the case at bar.

6. A similar situation existed in Bratton v. Commissioner, 6 Cir., 217 F.2d 486, where the court found the debtor to have been insolvent through 1950 and held that the creditor's voluntary cancellation of indebtedness during that year was a contribution to capital.