Max and Molly Finkel v. Commissioner.
Finkel v. Commissioner
Docket No. 75609.
United States Tax Court
T.C. Memo 1961-76; 1961 Tax Ct. Memo LEXIS 273; 20 T.C.M. (CCH) 359; T.C.M. (RIA) 61076; March 20, 1961
James T. Waldron, Esq., for the petitioners. Raymond T. Mahon, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined a deficiency in the petitioners' income tax for 1956 in the amount of $6,281.10. The issue is whether petitioners are entitled to business bad debt deductions in the amounts of $21,312.27 and $12,216.98 resulting from the purported worthlessness in 1956 of loans made to two corporations over a period of several years. Findings of Fact Max and Molly Finkel, husband and wife, are residents of New Bedford, Massachusetts. They filed a joint income tax return *274 for 1956 with the district director of internal revenue for the district of Massachusetts. Max Finkel will hereinafter be called the petitioner. New Bedford Fish Products Corporation, hereinafter called New Bedford, was organized under the laws of Massachusetts in 1944 by petitioner, Charles J. McGowan, Phillip J. Kane, Bernard Finkel and Harry Finkel for the purpose of constructing and operating a fish reduction plant, that is, the manufacture of fish meal and condensed fish solubles. The total authorized and outstanding stock of New Bedford was 1,000 shares of common stock with a par value of $100 a share. Petitioner and the four other stockholders in New Bedford each owned 200 shares of stock. After numerous hearings, New Bedford was able to obtain the necessary license and permits for the operation of its fish reduction business, which was regarded by the City of New Bedford as an offensive industry. New Bedford was in operation from about 1945 until December 1951, when it suspended operations because of the influx in the domestic market of cheap imported fish. The plant remained closed, with only a maintenance man and watchmen on duty, until December 1956. From late in 1952 *275 until 1956 the petitioner and the other New Bedford stockholders made efforts to sell the plant. During the period from March 1946 through December 8, 1956 the petitioner and the other stockholders advanced amounts to New Bedford, some of which were repaid to the stockholders from time to time, and on December 8, 1956 the net outstanding amounts of these advances to the corporation were as follows: Balance of
Stockholder
Advances
Petitioner
$42,874.82
Charles J. McGowan
57,318.09
Phillip J. Kane
30,803.10
Bernard Finkel
29,253.10
Harry Finkel
6,950.00
Meso, Inc. (hereinafter called Meso) was organized under the laws of Massachusetts in 1943 for the purpose of transporting fish waste to New Bedford, which was the sole customer of Meso. The total outstanding common stock of Meso was owned by the same individuals who were stockholders of New Bedford, each of them owning 80 shares of common stock with a par value of $100 a share. Over a period of years ending in September 1954 the five stockholders in Meso advanced amounts to the corporation, and the balances of these advances to the corporation, as of December 8, 1956, were as follows: Balance of
Stockholder
Advances
Petitioner
$12,216.98
Charles J. McGowan
11,889.75
Phillip J. Kane
3,325.00
Bernard Finkel
2,475.00
Harry Finkel
1,750.00
$31,656.73
*276 On December 3, 1956, the stockholders of New Bedford executed an agreement with Helen Levin to sell to her all the outstanding stock of the corporation. The agreement provided, in part, as follows: 1. This agreement is subject to the condition that at the time fixed for the transfer of said shares, A. The vote adopted by the Board of Health of the City of New Bedford on October 19, 1944, * * * (designating the area occupied by the plant of New Bedford Fish Products Corp. "as an area for the establishment of a fish dehydration plant for the manufacture of fish meal, under Section 143, of Chapter 111 of the General Laws, as amended") shall be in full force and effect. B. The written consent and permission of the City Council of the City of New Bedford dated October 19, 1944, to said New Bedford Fish Products Corp. "to occupy and use for the purposes of a fish dehydration plant" the premises and buildings of the corporation included within the area mentioned in the above Board of Health vote, together with the written consent dated November 13, 1944, of Arthur N. Harriman, then Mayor of New Bedford, shall be in full force and effect. * * *
C. New Bedford Fish Products Corp. *277 shall be free of all debts and liabilities whatsoever, and without limiting the generality of the foregoing shall be free of taxes assessed by the City of New Bedford against the corporation for the year 1956; provided, however, that any indebtedness of the corporation to its stockholders which may be outstanding at the time fixed for transfer of said shares shall be represented by demand notes of the corporation which shall be endorsed to the Buyer without recourse. Meso's only asset, on or about December 3, 1956, was an account receivable from New Bedford in the amount of $67,288.45, and Meso's only liability at this time was an account payable to its stockholders in the amount of $31,656.73, representing the advances made to the corporation. About this time the indebtedness of New Bedford to Meso in the amount of $67,288.45 was canceled, and there was recorded on the books and records of New Bedford, as of December 8, 1956, an item of $67,288.45 which was identified as "Capital Surplus (Donated)." The sales agreement of December 3, 1956 was consummated on December 8, 1956. On or about the latter date, New Bedford issued unsecured promissory notes payable on demand to each of *278 the stockholders for the amount of his outstanding advances to the corporation, which had been reflected as open accounts on the corporation's books. Petitioner received a note in the amount of $42,874.82. In accordance with the sales agreement of December 3, 1956, these promissory notes were endorsed by the New Bedford stockholders to the order of Helen Levin, the buyer, without recourse. The total consideration received by the New Bedford stockholders for the sale of their interests in the corporation was $75,000, with $19,000 to be paid in cash and the balance ($56,000) in the buyer's promissory notes, which were payable semiannually over a period of eight years and bore interest at 5 percent. The buyer's notes were secured by all of the outstanding New Bedford stock, which was placed in escrow, and in the event of the buyer's default on the payments, the sellers could sell all or any part of the security. Petitioner's share of the total consideration for the sale was $4,750 in cash and $16,812.55 in the buyer's notes, or a total of $21,562.55. At the time of the trial of the case, New Bedford was still in existence; the buyer continued to make payments on her notes; and the *279 New Bedford stock continued in escrow. During the year 1956 the petitioner was general manager of Fish Transport Company, Inc., which was engaged in highway freight transportation over an area of seven states. The corporation ceased operations in 1958. Petitioner's annual salary was $15,000 in 1956, and he worked seven days a week in his job as general manager. At various times from 1933 to the time of trial the petitioner has been engaged in (apparently not as an employee) or interested in the following businesses: New Bedford
Fish reduction plant
Marrit Box Factory, Inc.
Manufacture of fish
boxes
Fish Transport Com-
Highway transporta-
pany, Inc.
tion of fish and
general commodi-
ties
Molanie Corporation
Operation of fishing
vessel
Seafood Packers, Inc.
Buying and selling
fish - also transpor-
tation of fish
Pilgrim Fish Corpora-
tion
Processing frozen fish
James E. McGurney
Company, Ltd.
Buying lobsters
Marine Products Corpo-
ration
Trash fish business
Sea Products Truckers,
Inc.
Fish transportation
Silver Trap Company
Trap fishing opera-
tion
Whaling City Fillet
Company
Fish processing
Boat Hill, Inc.
Ownership of boat
Seven Seas Seafood Cor-
poration
Fish filleting plant
Provincetown Fillet Cor-
poration
Fish filleting plant
The Liberator, Inc.
Contracted for two
boats - never fulfilled
Wood End Development
Holds approximately
Corporation
140 acres of unde-
veloped land
Tinkham Construction
Company
Construction business
Washburn Development
Bought and sold a
Company
block of undevel-
oped land
Cohanna Corporation
Bought and sold a
piece of developed
real estate
Merrimount, Inc.
Bought "some" real
estate, developed it,
and sold it
Massachusetts Trucking
Highway transporta-
Corporation
tion of fish and
general commodi-
ties
Bedford Metal Products
Corporation
Importing
Meso, Inc.
Transporting fish
*280 In the 1956 joint income tax return filed by petitioner and his wife, the petitioner reported a long-term capital loss of $20,000 from the transfer to Helen Levin of his 200 shares of New Bedford, which had a basis of $20,000, and he also reported a business bad debt deduction of a loan to New Bedford of $21,312.27. The following explanation appears in the petition: The position of the stockholders as creditors was superior in law to their standing as stockholders and had the stockholders sued the corporation, obtained judgment and levied execution against the assets of the corporation the maximum amount that could be obtained thereby would be $75,000.00, the amount which the purchaser as an independent buyer was ready to pay for the corporation stock on the condition that the corporation was free from debt. Accordingly, we as a one-fifth owner of the issued and outstanding capital stock of the corporation which cost $20,000.00 and also a creditor of the corporation in the amount of $42,874.82 received $21,562.55 from the $75,000.00 sales price of the stock resulting in an ordinary loss of $21,312.27 ($42,874.82 less $21,562.55) and a capital loss of $20,000.00 representing our *281 cost of the 200 shares of common capital stock of New Bedford Fish Products Corporation. Petitioner also reported a long-term capital loss of $8,000 from his 80 shares of Meso stock, which had a basis of $8,000, and a business bad debt deduction of $12,216.98, representing the outstanding balance of his advances to Meso as of December 8, 1956. Respondent disallowed the business bad debt deductions claimed by petitioner in the amounts of $21,312.27 and $12,216.98. Opinion Petitioner took deductions for bad debts in his 1956 income tax return which he described as "Loans which became worthless 12/8/56 New Bedford Fish Products Corp. 21312.27 Meso Inc. 12216.98 Total 33,529.25." The burden was on petitioner to prove, amongst other things, that the debts became worthless in 1956 within the meaning of section 166, Internal Revenue Code of 1954. Assuming these loans were business debts, the evidence wholly fails to establish the worthlessness of either loan in the year in question. The loan to Meso in the sum of $12,216.98 was a loan to a corporation which, prior *282 to December 8, 1956, possessed an asset, in the form of a bill receivable from New Bedford, in the face amount of $67,288.45. There is nothing to show this asset was worthless. Petitioner seems to argue his Meso loan became worthless when, on December 8, he and the other four stockholders of Meso, each owning 20 percent of its stock, caused Meso to cancel the New Bedford obligation. The New Bedford obligation was Meso's only asset and it was more than enough to cover all of Meso's liabilities to its shareholders. If a creditor cancels the debtor's obligation, he cannot claim his forgiveness of the debt renders it worthless. Lidgerwood Manufacturing Co., 22 T.C. 1152, affd. 229 F. 2d 241, certiorari denied 351 U.S. 951; George F. Thompson, 6 T.C. 285, affd. 161 F. 2d 185. That is in effect what was done here. Meso forgave the New Bedford debt and it is apparent petitioner and the other four shareholders who caused Meso to do this, forgave their debts due from Meso. Since petitioner and each of the other four shareholders *283 in Meso owned 20 percent of the stock of New Bedford, the cancellation of the receivable merely increased their capital contributions to New Bedford. Lidgerwood Manufacturing Co., supra. In fact, the transaction was recorded on New Bedford's books as capital contributions by the shareholders in the amounts of their advancements to Meso. There is no evidence showing the worthlessness of the loan to New Bedford in the sum of $21,312.27. This loan was, in the year 1956, placed in the form of a demand note of the corporation to petitioner in the sum of $42,874.82. All that we learn from the evidence is that pursuant to a sales contract, the note was endorsed and transferred by petitioner to the buyer of his New Bedford stock. Petitioner seems to argue the worthlessness of his debt is somehow established because he was required by the sales agreement to transfer his demand note to the buyer of his stock. Transferring his debt under the compulsion of his own agreement so to do hardly establishes the loss of the debt by reason of its worthlessness. It is apparent the notes were considered valuable by the buyer. Petitioner testified that "If no notes went, no deal." Moreover, petitioner's *284 application of the payments made to him by the buyer indicates he did not consider the note worthless. He applied what he received from the buyer in 1956 ($21,562.55) against the debt New Bedford had owed him in the total sum of $42,874.82, and claimed the balance, or $21,312.27, as a bad debt loss. It is enough to sustain respondent's determination to say we hold petitioner failed to sustain his burden of showing the worthlessness in the year in question of the loans to Meso and New Bedford. Decision will be entered for the respondent.