PUBLISH

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

----------------------------------------

No. 98-8298

----------------------------------------

D. C. Docket No. 24341-95

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
03/05/99
THOMAS K. KAHN
CLERK

ROBERT R. PLANTE and MARY B. PLANTE,

Petitioners-Appellants,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

----------------------------------------------------------------

Appeal from the Decision of the
United States Tax Court

----------------------------------------------------------------

**(March 5, 1999)**

Before EDMONDSON and BLACK, Circuit Judges, and RESTANI*, Judge.

_____

\*     Honorable Jane A. Restani, Judge, U.S. Court of International Trade, sitting
by designation.

PER CURIAM:

Taxpayers, Robert Plante and Mary Plante, appeal the tax court's decision that they are not entitled to a business bad-debt deduction for 1991 and the associated carryover losses to later years. We see no reversible error and affirm.


BACKGROUND


In 1987, Robert Plante (Plante) purchased a marina. He then transferred all of the marina's assets to Boating Center of Baltimore, Inc. (BCBI). Plante was president and sole shareholder of BCBI. Then, Plante transferred a total of

2

$320,000 to BCBI, evidenced by promissory notes. Over the next four years, Plante advanced another $155,000 to BCBI. These advances were not recorded as promissory notes.

BCBI suffered heavy losses; so, Plante decided to sell the business. Preliminary negotiations with a buyer resulted in a selling price of $1,050,000. At closing, on 20 December 1991, the buyer learned about the $475,000 in advances Plante made to BCBI: advances reflected in BCBI's books as a liability to Plante. When the buyer insisted that liability from BCBI to Plante be eliminated, the parties, in Maryland, added this provision to the Stock Purchase Agreement:

The Shareholder, as the Sole Shareholder and as President of the Corporation, hereby makes the following representations...

Shareholder has transferred Four Hundred Seventy-five Thousand ($475,000.00) Dollars of notes and accrued interest of the Corporation due Shareholder as of 11/1/91 to the equity account of the Corporation and has made this an irrevocable capital contribution to the Corporation. The notes, accrued interest and capital lease due

4

Shareholder as of the Closing have been tendered to Buyer in exchange for Buyer notes.

In this appeal, Plante asks us to treat the $475,000 as a bad debt, instead of a capital contribution because this treatment would allow him to pay less tax. The Tax Court, however, treated the $475,000 as a capital contribution and ordered Plante to pay the IRS $8,849.

## DISCUSSION

We must determine whether the $475,000 Plante advanced to BCBI was a loan or a capital contribution. We usually apply a 13-factor test to make this determination. See Lane v. United States, 742 F.2d 1311, 1314-15 (11th Cir. 1984).

After "[t]aking into account the [thirteen] factors," the Tax Court decided that the $155,000 not evidenced by promissory notes was not deductible. The Tax Court reasoned that Plante failed to carry his burden of proof on his claimed deduction because Plante provided "virtually no information regarding $155,000 of the amount here in dispute[.]"

We do not need to decide today, however, if the Tax Court correctly applied the 13-factor test to the sum not tied to promissory notes.[1] The Tax Court's decision -- based on a different theory -- about the $320,000 evidenced by promissory notes that Plante advanced to BCBI applies with equal force to the full

---

[1] Two considerations make us hesitant to review the Tax Court's application of this test. First, the Tax Court did not provide a written explanation for its application of the factors. Second, the Tax Court did not make explicit findings on the corporate books, interest payments, and testimony of Plante suggesting that the advances, at a time before the sale, were loans.

amount ($475,000) claimed by Plante[2] and provides sufficient grounds to affirm the Tax Court's decision.

When a taxpayer characterizes a transaction in a certain form, the Commissioner may bind the taxpayer to that form for tax purposes. See Bradley v. United States, 730 F.2d 718, 720 (11th Cir. 1984). This is the rule: "[a] party can challenge the tax consequences of his agreement as construed by the Commissioner only by adducing proof which in an action between the parties would be admissible to alter that construction or to show its unenforceability because of mistake, undue influence, fraud, duress,

---

[2]Before the Tax Court, "[n]either party ma[de] a distinction between the portion of the $475,000 in unpaid advances represented by notes and the remaining portion."

et cetera."[3]  *Id.*  This rule is named the <u>Danielson</u> rule after a case in which the rule was applied.  *See* <u>Commissioner v. Danielson</u>, 378 F.2d 771, 775 (3d Cir. 1967).

The Tax Court invoked the <u>Danielson</u> rule when it said that the Stock Purchase "[A]greement clearly makes the disposition of the notes part of the sale transaction and characterizes their

---

[3] In his brief, Plante asserts that he "went along with the changes [to the Stock Purchase Agreement] because he was under duress."  Plante, however abandoned a true duress claim during oral argument by saying: "First of all, the taxpayer here does not assert that ... there was any duress or overreaching in the transaction with the buyer."  Even when we consider what Plante has called a duress argument, we must reject it as meritless:  general economic hardship is not "duress" for legal purposes.  *See* <u>Lee v. FlightSafety Servs. Corp.</u>, 20 F.3d 428, 432 (11th Cir. 1994); <u>Blumenthal v. Heron</u>, 274 A.2d 636, 640-41 (Md. 1971).

disposition as a contribution to BCBI's capital." We agree with the Tax Court that Plante characterized his advances to BCBI as capital contributions and may not now obtain the tax benefits of treating the advances as loans to BCBI.

The Stock Purchase Agreement is unambiguous: "[Plante] has transferred ... $475,000.00 ... of notes and accrued interest of the Corporation due [Plante] as of 11/1/91 to the equity account of the Corporation and has made this an irrevocable _capital contribution_[.]" (emphasis added). This sentence characterizes Plante's advances as a capital contribution.

Plante, however, makes two arguments attempting to avoid the _Danielson_ rule. First, he says that the Stock Purchase

Agreement is ambiguous in characterizing his advances as capital contributions and that, therefore, we must use evidence extrinsic to the Agreement to decide if the advances were capital contributions or loans. He says the Agreement is ambiguous because the second sentence of the Agreement conflicts with the first sentence. If the debt were transferred to equity on 11/1/91, according to Plante, then Plante could not own the notes he purported to transfer on 12/20/91.

We disagree. We do not think the first sentence means that the advances were made to equity on 11/1/91. We think "as of 11/1/91" is the date for calculating BCBI's liability, not the date of the capital transfer because "as of 11/1/91" immediately follows "due

[Plante]."[4]  And, if "as of 11/1/91" meant the transfer took place on 1 November, the Agreement would probably be written "on 11/1/91."

Also, if the advances were transferred to equity on 1 November, as Plante contends, then the buyer would not have been concerned about BCBI's potential liability to Plante on 12/20/91. So, the advances were made into capital contributions on 20 December 1991.

_____

[4]This reading is consistent with a Stipulation agreed to by Plante and the IRS: "As of November 1, 1991, the petitioner had unpaid advances to the corporation totaling $475,000.00." Also, the preamble to the Stipulation makes clear that the IRS did not agree that use of the word "advance" means "loans for federal income tax purposes."

Regardless of whether the advances were debts at one time, the advances were characterized at closing as capital contributions. Tendering the "notes, accrued interest and capital lease" to the buyer -- the words of the second sentence of the Stock Purchase Agreement -- was a way to implement the buyer's and seller's plan to extinguish potential debts of BCBI to Plante. No inconsistency or ambiguity, therefore, exists in the pertinent provision. Having made his decision to treat the advances to BCBI as capital contributions to close the million-dollar deal, Plante cannot now look for recoupment from the IRS.

Plante's second argument to avoid the Danielson rule is that the Danielson rule should not apply in this case. He notes, correctly,

13

that one purpose of the Danielson rule is to prevent the IRS from being "whipsawed": litigating against two parties, like Plante and BCBI, to collect tax from only one party. Plante asserts BCBI was insolvent. Then, he argues that the Danielson rule does not apply if the corporation was insolvent before and after the notes were canceled because "cancellation of the debt will not result in a taxable income to BCBI." No danger of "whipsaw" exists, therefore, says Plante.

The record is not plain that BCBI was insolvent before and after the sale. In any event, the Danielson rule has other purposes, however, that are applicable to this case. "If a party could alter the express terms of his contract by arguing that the

terms did not represent economic reality, the Commissioner would be required to litigate the underlying factual circumstances of 'countless' agreements." *North Am. Rayon Corp. v. Commissioner*, 12 F.3d 583, 587 (6th Cir. 1993). Also, business agreements are often structured with an eye toward the tax consequences of the agreement.[5] Allowing one party to realize a better tax consequence than the consequence for which it bargained is to grant "a unilateral reformation" of the agreement, which

---

[5] The Stock Purchase Agreement was negotiated with an eye to the tax consequences. According to Plante's brief: "The terms of the Stock Purchase Agreement were dictated by [the buyer] to gain tax and other advantages."

considerably undermines the certainty of business deals.[6]
Danielson, 378 F.2d at 775.

Plante raises a number of other arguments in Sections A, E, and F of his brief, as well as arguments about other interpretations of the Danielson rule, about alternate constructions of the Stock Purchase Agreement, and about extrinsic evidence. We have considered these arguments, but we cannot agree with the arguments.[7]

---

[6] We think these reasons for the Danielson rule also refute Plante's arguments based on Comdisco, Inc. v. United States, 756 F.2d 569 (7th Cir. 1985) (investment-tax-credit case).

[7] We are unpersuaded by Plante's arguments based on Giblin v. Commissioner, 227 F.2d 692 (5th Cir. 1955). Giblin is distinguishable from this case because Giblin's debt cancellation,

16

We conclude that Plante's advances were a capital contribution and, therefore, Plante was not entitled to a business bad-debt deduction and associated carryover losses.

We AFFIRM.

---

apparently, was not specifically characterized as a capital contribution and because it was clear from the <u>Giblin</u> record -- as it is not clear here -- that the corporation was insolvent before and after the cancellation. We are more persuaded by <u>Lidgerwood Mfg. Co. v. Commissioner</u>, 229 F.2d 241 (2d Cir. 1956). Also, <u>Giblin</u> pre-dates our adoption of the <u>Danielson</u> rule. <u>See</u> <u>Spector v. Commissioner</u>, 641 F.2d 376 (5th Cir. 1981).

17