DUDLEY T. HUMPHREY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64376.   Promulgated March 28, 1935.

*Alex M. Hamburg, Esq.*, for the petitioner.
*F. M. Thompson, Esq.*, for the respondent.

OPINION.

ARUNDELL: This proceeding is to test the correctness of respondent's determination of a deficiency in income tax in the amount of $12,749.93 for the calendar year 1929. The deficiency arises primarily from respondent's action in determining the profits on the sale by petitioner of his interest in a partnership. Petitioner alleges as error the increase of his net income in the sum of $70,000, representing the face value of three nonnegotiable notes received in connection with the sale, and the failure of the respondent to tax the profit from the sale as a capital gain. The third error alleged is the inclusion in income of the sales price of certain American and Foreign Power stock without an allowance of petitioner's cost. No evidence was offered on this third point, and as to it we must sustain the respondent.

In February 1926 the partnership of Waterman & Co. was formed, with offices at Albany, New York, and the partnership immediately entered into the business of buying and selling securities. Petitioner had approximately a one-ninth interest in the capital and the profits of the partnership. The other partners were W. V. A. Waterman, S. E. Vail, and Alida L. Waterman, the latter being a limited partner.

On February 1, 1929, an agreement was entered into between petitioner, as party of the first part, and W. V. A. Waterman, S. E. Vail, and Alida L. Waterman, as parties of the second part, wherein it is recited that petitioner is withdrawing from the partnership, that his interest in the partnership on January 31, 1929, amounted to the sum of $142,626.99, that he transfers and assigns unto the parties of the second part " all his right, title and interest in the aforesaid limited copartnership and in the good will thereof " in consideration of $72,626.99 in cash and the balance:

* * * by notes of the parties of the second part, bearing date this first day of February, 1929, and maturing on the first day of February, 1930, bearing interest at five per cent per annum which notes shall be non-negotiable in form and to be executed for the following amounts by the following parties of the second part respectively, viz: a note for Fourteen thousand dollars ($14,000.) executed by William V. A. Waterman, a note for Twenty-eight thousand dollars ($28,000.) executed by Sheldon E. Vail, and a note for Twenty-eight thousand dollars ($28,000.) executed by Alida L. Waterman. The receipt of said cash and notes is hereby acknowledged by the party of the first part.

The agreement was carried out and petitioner received the cash and the three nonnegotiable promissory notes described in the agreement. These notes were duly paid on February 1, 1930, when they fell due, and petitioner included the sum received in his income tax return for 1930.

It is petitioner's position that, being on the cash receipts and disbursements basis, the nonnegotiable notes should not be included in his income for the year 1929. The notes were unsecured and were received by petitioner as evidence of the indebtedness due him and not in satisfaction of this indebtedness. The testimony is that the notes had no fair market value. In *John B. Atkins*, 9 B. T. A. 140, we said: " * * * in the case of one reporting income on the cash receipts and disbursements basis only cash or its equivalent constitutes income." A mere promise to pay in the future which is not accepted in payment, but only as an evidence of indebtedness, is not ordinarily the equivalent of cash. Taxation, as the courts many times have said, is eminently practical; and in determining taxable income we must view obligations for future payments from a practical point of view. As stated by Judge Learned Hand in *Bedell* v. *Commissioner*, 30 Fed. (2d) 622, 624:

> If a company sells out its plant for a negotiable bond issue payable in the future, the profit may be determined by the present market value of the bonds. But if land or a chattel is sold, and title passes merely upon a promise to pay money at some future date, to speak of the promise as property exchanged for the title, appears to us a strained use of language when calculating profits under the income tax. * * * It is absurd to speak of a promise to pay a sum in the future as having a "market value", fair or unfair. Such rights are sold, if at all only by seeking out a purchaser and higgling with him on the basis of the particular transaction.

In our opinion it was error to include the three nonnegotiable notes in petitioner's income for the year 1929.

The next matter in issue is whether the gain realized in 1929 on the sale of petitioner's interest in the partnership was capital gain or ordinary income. Petitioner's view is that, having owned an interest in the partnership more than two years, it was a capital asset and the gain realized was a capital gain. Respondent's argument against this is based on the theory that a partner's interest in the partnership consists of a joint ownership with the other partners of the partnership assets. The assets in this case consisted of securities held by the partnership primarily for sale; hence, respondent argues, they were not capital assets.

There are expressions in the cases to the effect that a partner " is a joint owner of the firm assets ", *Harris* v. *Commissioner*, 39 Fed. (2d) 546, affirming 11 B. T. A. 871; indeed, the New York statutes provide that: " A partner is a co-owner with his partner of specific partnership property holding as a tenant in partnership." These, however, are only general expressions and a further reading discloses that a partner's rights in partnership property are severely limited. Under section 51 of the New York partnership law a partner " has an equal right with his partner to possess partnership

property for partnership purposes; but he has no right to possess such property for any other purpose without the consent of his partners." That section further provides:

A partner's right in specific partnership property is not assignable except in connection with the assignment of the rights of all the partners in the same property.

Section 51 provides:

A partner's interest in the partnership is his share of the profits and surplus and the same is personal property.

In *Henry Wilson*, 16 B. T. A. 1280, at page 1287, we said:

It is a well recognized principle that the title to partnership property is not in the individual members of the firm so that either may assign or transfer to another an undivided share in any specific articles, but it is in the firm as an entirety, subject to the right of the partners to have it applied to the payment of the debts of the firm and the equities of the partners.

In *Helvering* v. *Walbridge*, 70 Fed. (2d) 683, it is pointed out that even under the common law the portion of the property of which a partner was regarded as owner was nevertheless an asset of the firm; "he could not withdraw it; he had no effective power over it, and therefore no interest in it, save as it might figure in his share of the profits and surplus." Further, " * * * the legal interest of a partner as joint owner has long since lost most of its legal incidents." See also *Edward B. Archbald*, 27 B. T. A. 837; affd., 70 Fed. (2d) 720. In *Blodgett* v. *Silberman*, 277 U. S. 1, a partner's interest is described as follows:

A partner has a right equal to that of his partners to possess specific partnership property for partnership purposes, but not otherwise. His right in specific partnership property is not assignable, nor is it subject to attachment or execution upon a personal claim against him; upon his death the right to the specific property vests not in the partner's personal representative but in the surviving partner; his right in specific property is not subject to dower, curtesy, or allowance to widows, heirs or next of kin.

In the case just cited the partnership interest before the Court was that of a general partner in a limited partnership, and such was the interest of this petitioner in Waterman & Co. The Court in that case concluded that " the interest of the partner was the right to receive a sum of money equal to his share of the net value of the partnership after a settlement, and this right to his share is a debt owing to him, a chose in action, and an intangible."

Now, applying the above holdings to the present case, it would appear that what petitioner sold to his partners was an intangible consisting of his right to a share in the net value of the partnership after settlement of its affairs. He had no interest in the assets of the partnership as such; consequently, what he sold was not a portion

of or an interest in the partnership securities. His interest in the partnership was separate and distinct from his coownership of the partnership assets and the length of time of his ownership of the partnership interest is not measurable by the period of time that the partnership had owned the securities on hand at the time he sold his interest. He had owned his interest more than two years and in our opinion it constituted a capital asset in his hands.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

STERNHAGEN, dissenting: I find it impossible to adopt the view that an amount received by an individual from his erstwhile partners in consideration for his retirement from the partnership and for his interest therein includes a "gain from the sale or exchange of capital assets", as required by the Revenue Act of 1928, section 101 (c) (1), such "capital assets" being defined in subdivision (8) as "property held by the taxpayer for more than two years." I agree that the nonnegotiable notes do not involve income for 1929, and I agree that the partner may not be regarded as selling the specific assets of the partnership and that the duration of his property holding is not to be taken as that of the partnership's holding, although it is interesting that the $142,626.99 which he was to receive upon retirement was, as shown by the evidence, computed entirely upon the market value of the assets on the date of retirement. But it seems to me an empty formula of words that an interest in a partnership is itself property and that to end it for cash is therefore a sale of property, irrespective of its relation to the partnership assets. Surely if one, say a lawyer, has been a member of a service partnership for 10 years and quits for a cash consideration, the transaction would hardly be called *per se* a sale or exchange of property held more than two years. Yet this seems to me to decide as much. That "sale or exchange" is not to be loosely applied is indicated by *John H. Watson, Jr.*, 27 B. T. A. 463, and *Arthur E. Braun, Trustee*, 29 B. T. A. 1161, 1177, in which the amount received upon the termination of an obligation was held not derived from a sale or exchange of the obligation. Likewise the amount received upon the termination of a partnership should, in my opinion, also be excluded unless there is evidence of a sale or exchange.

McMAHON agrees with this dissent.