**REYNOLDS v. BOOS.**

No. 14108.

United States Court of Appeals
Eighth Circuit.

March 16, 1951.

Harry Marselli, Sp. Asst. to Atty. Gen. (Theron L. Caudle, Asst. Atty. Gen., Ellis N. Slack and Harry Baum, Sp. Assts. to Atty. Gen., Clarence U. Landrum, U. S. Atty. and William P. Murphy, Asst. U. S. Atty., St. Paul Minn., on the brief), for appellant.

Arnold L. Guesmer, Minneapolis, Minn., for appellee.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

Under section 22(b) of the Internal Revenue Code, 26 U.S.C.A. § 22(b), property acquired by gift "shall not be included in gross income and shall be exempt from taxation" of income.

Did the cancellation of some rental indebtedness by a lessor represent a gift in the present situation or did it constitute taxable income to the lessee?

The question arises in a suit against a Collector of Internal Revenue for refund of the income taxes paid by the lessee on cancellations of $8,232 made by the lessor in each of the years 1940 and 1941. The district court granted the refunds, and the Collector has appealed.

The cancellations were made from a back-rent total of $45,266, which had accumulated through the depression years of 1932 to 1939. The lease was one on space in an office building in Minneapolis, entered into in 1929 before the financial market broke in October of that year, covering a ten-year term, and providing for an annual rental of $20,000, payable in installments of $1,666.66 monthly. From 1932 to 1936, the lessor had accepted payments from the lessee of $1,000 monthly and from 1936 to 1939 the sum of $1,200 per month.

The lessee was not during this period insolvent, but the diminished payments were in line with the changes which had occurred in his business, were in harmony with what generally was being done by landlords in Minneapolis and elsewhere, and represented the fair rental value of the property under the conditions that prevailed. The lessor never made any entries in its records of the unpaid balances.

In 1939, some months before the lease would expire, the lessor and the lessee got together and agreed upon an extension of the lease for a 5-year period, at an annual rental of $15,000, in payments of $1,250 per month. Oral evidence was admitted at the trial, over objection of the Collector, which persuaded the district court, and on which it predicated its findings, that the back-rent accumulation had in no way been a factor of negotiation or of motivation in arriving at the extension arrangement; that the terms of the extension were agreed upon wholly without regard to or even mention of the existence of any back rent; that the rental to be paid under the extension was no more or less than but the same as any other lessee would have paid for such a term at the time; and that the lessee's desire to obtain the extension had been controlled solely by other considerations, such as the strategicness of the location as a patronage source in his dental laboratory and supply business, the long-established conduct of the business there, the special suitability of the space for the business, and the formidable expense that any relocating of the business would entail, with its need for readaptation of part of the machinery and replacement altogether of other equipment usable only at the particular location, as well as the revenue loss which would be occasioned by a disrupting of business operations from the moving and relocating process.

These and other circumstances in the admitted evidence were suggestive that the parties in their extension negotiations had regarded and treated the back-rent accumulation as being a dead issue between them. As previously indicated, no charge had ever been made by the lessor on its books against the lessee for any of the deficiencies. The matter of the back rent was brought up by the lessee's auditor or accountant, who was called in after the lessor and the lessee had agreed upon the extension arrangement. The auditor had had the rental installments under the lease entered on the lessee's records as accruals, and upon being informed of the extension he wanted to know what he was to do about carrying the accumulation or clearing it off the books. The lessor replied, "Well, you don't owe me any back rent," "That is water over the dam," and "That is all to be forgotten."

The auditor was in doubt as to whether clearance of the whole accumulation from the lessee's records at one time might not result in a heavy income tax burden upon the lessee for that year, and he suggested therefore that he be allowed to put a provision in the extension agreement "to spread it over several years." At that time it was not legally clear, as it later was made by Helvering v. American Dental Co., 318 U.S. 322, 63 S.Ct. 577, 582, 87 L. Ed. 785, that payment of income taxes ever could be escaped by any solvent debtor on a debt remission, and especially if the

debt previously had been the subject of a tax advantage. Cf., e.g. Helvering v. Jane Holding Co., 8 Cir., 109 F.2d 933, 941, 942. It was in relation to the calendar aspect of this possible tax problem that the auditor wanted to have a free hand to deal with the lessee's records.

The lessor had no concern about these bookkeeping perplexities of the lessee and he said to the auditor, "Whatever you want to do is all right with me. I don't care. You write it up and let me know." The auditor [text correction] inserted a provision as follows in the extension agreement which the parties signed: "This Extension of Lease being executed on the understanding that a pro rata portion of the unpaid rentals under the existing lease, amounting to $45,266, shall be written off and cancelled one-sixty-sixth (1/66) portion thereof each month on payment by the tenant of the monthly rental of $1,250 commencing July 1st 1939, the said amount to be written off being $686.00 per month."

If the oral evidence which has been set out was competent to be admitted and considered against this provision, we do not think it can here be said that the trial court's finding that the cancellations represented in intention and fact a gratuitous forgiveness of back rent—or, in the language of the American Dental Co. case, supra, "a release of something to the debtor for nothing"—was erroneous in the situation. The Collector contends, however, that, whatever may have been the initial intention of the parties, the provision which the auditor had inserted in the extension agreement had given the cancellations a contractual and considerational form and status and that it was not open to a taxpayer to controvert by parol evidence any legal status which existed on the face of his written agreement and which the Bureau of Internal Revenue chose to accept.

The district court was of the view (1) that in appraising the tax reality involved it had the right to hear and consider the circumstances underlying the parties' intentions and actions, with due regard of course for the instrument itself as one of the elements of the situation, and (2) that in any event the extraneous evidence which it received and relied on in its findings could not be said in the present situation to "vary any of the terms of the lease extension" or "do violence to any term of the agreement."

On the first of these questions, we recognized in Birmingham v. Bartels, 8 Cir., 157 F.2d 295, 301—which involved social security taxes—that instruments between taxpayers and third parties are not in tax suits so subject to the parol evidence rule as to preclude a taxpayer from showing that the instrument does not in fact reflect the intended and actual agreement made between the parties. In that case, however, a majority of the judges sitting felt that the circumstances shown did not disestablish the intent and agreement to create the legal status which existed on the face of the instrument, artificial and impractical though some of its rights and incidents might prove themselves to be in execution.

We have in a number of other cases also, where a taxpayer has sought by extraneous evidence to overcome the legal status existing on the face of some written instrument, given consideration to the circumstances proved, as against the instrument itself. Among these are the recent ones of Coleman v. Commissioner of I. R., 8 Cir., 180 F.2d 758, and Hart-Bartlett-Sturtevant Grain Co. v. Commissioner of I. R., 8 Cir., 182 F.2d 153, where, however, as in the Bartels case, we regarded the circumstances of the particular situation as not having overthrown the reality of the intent and agreement manifested by the instrument.

It further should be noted that in the Bartels case the liability which we had imposed upon the taxpayer on the basis of his agreement, because it there seemed to us that the extraneous evidence did not demonstrate that the obligation and status appearing in the instrument were not actual or intended, was reversed by the Supreme Court. Bartels v. Birmingham, 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947, 172 A.L.R. 317. A majority of the Supreme Court was of the view that the recognition which we had given to the agreement

in that case had not looked realistically enough at the other circumstances and elements shown by the extraneous evidence.

The opinion took note, in its restoration of the trial court's decision, that the trial court had regarded the instrument as only one of the factors to be considered on whether an employer-employee relationship existed and had held that the extraneous evidence left the agreement without tax reality. The Government attempted to argue in the Supreme Court that the written contract ought alone to be considered, and that it should be held that taxing authorities always are entitled to accept the legal status appearing upon the face of any such instrument, if they choose to do so. In answer to this contention, the opinion pointed out that all of the decisions relied upon by the Government to support this position had involved only "the problem of corporate or association entity." 332 U.S. at page 131, 67 S.Ct. at page 1550. Nor can it be overlooked either that the dissent of the minority was rested on the specific ground that the contract on its face had created the legal status or relationship of employer and employee; that "the tax collector should be entitled to take such private arrangements at their face;" that this rule "is not restricted in its application to the use by taxpayers of corporate or related devices to obtain tax advantages;" and that in any case, for tax purposes, "If the Government chooses to accept the contract on its face, the parties should be barred from showing that it conceals the real arrangement."

On all the considerations mentioned, we hardly would be warranted here in declaring that the trial court was required to apply the parol evidence rule in the present situation and so was not at liberty to allow the lessee to attempt to establish extraneously that the cancellations were meant to be a gratuitous forgiveness and that, in permitting the auditor to include a provision in the extension agreement to evidence his authority "to spread it over several years," there was no intention to allow him to transform the forgiveness into anything other than "a release of something to the debtor for nothing."

The circumstances shown, with due regard on the part of the trial court for the weight which would prima facie inhere in the language of the instrument itself, left it for that court to say what the actual transaction of the parties had been. And, as previously stated, on the whole situation, we do not think that it properly can be declared that the trial court's finding, that the cancellations in intention and fact constituted gifts and not considerational releases, is clearly erroneous.

In the perspective of the extraneous evidence, there also might be room to view even the language of the provision itself, as the trial court further did, as not being inconsistent with the gift transaction found, in that the term "understanding" could have been meant to have in the situation the significance not of "condition" or "obligation" but of simply evidencing or confirming the permission granted the auditor of spreading the charge-offs over such period as he deemed desirable, with him thus in the extension agreement having specified the time and amount of each entry which he intended to make, and with the reference to the payment of rent under the extension agreement having been made, not to condition the charge-offs but only to fix the time of his making of the entries.

The Collector has made the further contention that, whether the cancellations constituted gifts or not, the lessee still could not escape payment of income taxes on them, because the unpaid rent had been the subject of previous tax benefits to him. The lessee used the accrual method of accounting in his business and so had deducted for income tax purposes each year the amount of rent owing under the lease, although only a part of it was at the time being paid. It may be mentioned, however, although the circumstance is without legal significance, that, after the cancellations were made, the lessee had offered to go back and make payment, with interest, of the amount of taxes which he had thus saved, even though the statute of limitations had run as to the returns involved.

What it apparently is here sought to get established is an absolute rule of liability in any case of tax benefits. In-

dividual situations may perhaps exist where a liability soundly can be found to be present because of some previous tax benefit, but there is no such general or blanket principle of tax liability. The Supreme Court specifically said in Dobson v. Commissioner of I. R., 320 U.S. 489, 506, 64 S.Ct. 239, 249, 88 L.Ed. 248, "We are not adopting any rule of tax benefits." And, in any event, the American Dental Co. case, supra, 318 U.S. 322, 63 S.Ct. 577, 87 L.Ed. 785, makes clear that the tax-benefit argument has no place in the present situation. In that case, the identical situation of alleged tax benefits existed as in our case. The opinion of the Supreme Court noted, 318 U.S. at page 323, 63 S.Ct. at page 578, that "This back rent had been accrued as an expense", but it nevertheless held that the subsequent cancellation had constituted a gift and so could not be taxed as income. See also American Dental Co. v. Commissioner of I. R., 7 Cir., 128 F.2d 254. We are aware of no departure by the Supreme Court from that position in a gift situation.

The judgment of the district court is affirmed.