Ivan H. GREER, Transferee, Brazoria Investment Corporation, Lita Greer, Ivan H. Greer, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15376.

United States Court of Appeals Fifth Circuit.

Feb. 23, 1956.

Alex Pope, Jr., John P. Ritchie, Hardwicke, Haddaway & Pope, Fort Worth, Tex., for petitioners.

Carolyn R. Just, A. F. Prescott, Robert N. Anderson, Davis W. Morton, Jr., Attys., Dept. of Justice, Washington, D. C., H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to the Atty. Gen., R. P. Hertzog, Acting Chief Counsel, I. R. S., Claude R. Marshall, Sp. Atty., I. R. S., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and RIVES and CAMERON, Circuit Judges.

RIVES, Circuit Judge.

This petition for review of a decision of the Tax Court[1] involves federal income taxes of Brazoria Investment Corporation from January 1, 1946 to the date of its dissolution, December 19, 1946, and of Ivan H. and Lita Greer, husband and wife, for the calendar year 1946. The issues here, as in the Tax Court, "relate only to the adjusted basis of certain houses for purposes of determining gain or loss and depreciation, and the amount of gain realized upon a liquidating dividend." As to the first issue, the Tax Court in its opinion summarizes the facts as follows:

"Brazoria, organized by the petitioner (Ivan H. Greer), his father and R. D. Looney, built 191 houses. Interim financing had been obtained from American General Investment Corporation and as the houses were completed and approved by the Federal Housing Administration, an insured loan, secured by mortgage from Brazoria, was obtained from Providence Institution for Savings. The interim financier was then paid. The petitioner and his father, as equal partners, did business as the Greer Building Materials Company, which furnished materials to Brazoria for the 191 houses. The partnership carried the price of this material on an open account with Brazoria and during 1943 and 1944 materials in the amounts of $49,507.84 and $2,998.70 were sold. The sales price of these materials was carried on Brazoria's open account. The Greer Building Materials Company and the partners, reporting their income on the cash basis, did not include the selling price of this material in their income tax returns for these years. The cost of this material, however, was included in the partnership re-

1. Reported in 20 T.C. 690.

turns as part of cost of goods sold in 1943 and 1944. In January, 1945, the partnership forgave the indebtedness owing to it from Brazoria in the total amount of $52,506.54. At that time Brazoria's outstanding stock was held principally by the petitioner and his father, each owning 4-¾ shares. Vera L. McCartney held one-half share and the remaining was either treasury stock or held to become such. The cancellation of the indebtedness was intended to be and was a contribution to capital and was treated by Brazoria as paid in surplus. The cost of the houses, as reflected on Brazoria's books, included the materials which had been supplied by the partnership and payment for which was forgiven."

The Tax Court reached the conclusion "that Brazoria, taking the substituted basis of the partnership, cannot include the $52,506.54 in its basis in the houses constructed by it."

The Tax Court's "Findings of Fact" further disclose that, during the years 1943 and 1944 when the partnership sold the building material to Brazoria, Ivan H. Greer and his father, A. W. Greer, together owned only 1% of the capital stock of Brazoria, though by the time the debt was cancelled in January, 1945, they owned over 90% of said stock. As to such cancellation, the Tax Court found:

"On January 8, 1945, at a meeting of the stockholders and directors, Greer Building Materials Company forgave the account for materials in the amount of $52,506.54. The account was forgiven in good faith in order to keep Brazoria solvent. The cancellation was not to any extent made for the purpose of evading or avoiding income tax liability. It was intended to be and was a contribution to capital and was intended to be and was treated as paid in surplus."

The statutes and regulations involved read as follows:

§ 113. *Adjusted basis for determining gain or loss*—

"(a) *Basis (unadjusted) of property.* The basis of property shall be the cost of such property; except that—

\* \* \* \* \* \*

"(8) *Property acquired by issuance of stock or as paid-in surplus. If the property was acquired after December 31, 1920, by a corporation*

---

\* \* \* \* \* \*

"(B) as paid-in surplus or *as a contribution to capital, then the basis shall be the same as it would be in the hands of the transferor,* increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. \* \* \*" Title 26 U.S.C.A. § 113, 1952 Ed.

"§ 115. *Distributions by corporations*

\* \* \* \* \* \*

"(c) *Distributions in liquidation.* Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock \* \* \*." 26 U.S.C.A., 1952 Ed., § 115.

Treasury Regulations 111, promulgated under the Internal Revenue Code of 1939:

"§ 29.22(a)—13. *Cancellation of Indebtedness.—*

"(a) *In general.*—The cancellation of indebtedness, in whole or in part, may result in the realization of income. If, for example, an individual performs services for a creditor, who in consideration thereof cancels the debt, income in the amount of the debt is realized by the debtor as compensation for his services. A taxpayer realizes income by the payment or purchase of his obligation at less than their face value. [See § 29.22(a)—17] *In general, if a shareholder in a corporation which is in-*

*debted to him gratuitously forgives the debt, the transaction amounts to a contribution to the capital of the corporation to the extent of the principal of the debt. * * *"* (Emphasis supplied.)

The parties are in agreement to the effect that the forgiveness of the debt amounted to a contribution to the capital of Brazoria.

The Tax Court held that the rationale of the Brown Shoe Company case [2] "requires relation of Brazoria's forgiven debt to the property for which the debt was incurred in the determination of the basis of the property under Section 113 (a) (8) (B), I.R.C.", and that such relation is also sustained by Detroit Edison Co. v. Commissioner, 319 U.S. 98, 63 S.Ct. 902, 87 L.Ed. 1286. With deference, we disagree.

■ Neither of those cases involved a fact situation similar to that here presented, where, at the time of the sale of materials by the partnership to Brazoria, the partners owned only 1% of Brazoria's stock, while at the time of the forgiveness of the debt they owned over 90% thereof. The partnership did not contribute, it sold the materials to Brazoria. Later, under a changed situation, the partnership gratuitously cancelled the debt. In the Brown Shoe Company case, supra, the contributed money was related to the property purchased with the money. In the present case, to relate the contributed debt back to the purchase of the materials going into the construction of the houses we would have to overlook all of the very material changes that occurred in the interim between the two transactions, including the necessity of the gift of the debt to keep Brazoria solvent, and the acquisition by the partners of the great majority of Brazoria's stock. The solution more consistent with the realities of the transactions is, we think, to hold that Brazoria's basis of the houses is the cost thereof, including the $52,506.54 indebtedness for building materials, while the subsequent cancellation of that debt amounted to a contribution to the capital of Brazoria "to the extent of the principal of the debt," but not related back to the building materials and the houses.

What has been said has application also to the second issue, the amount of gain realized by Ivan H. Greer upon his liquidating dividend from Brazoria. In calculating the amount distributed in liquidation of Brazoria, the debt contributed to its capital must be taken into consideration.

■ Further, the Tax Court found that "Brazoria's obligation to Providence Mutual to make monthly payments on each house continued until the full amount of the down payment was paid." The amounts distributed to the stockholders in liquidation of Brazoria were necessarily burdened with that continuing obligation.

■ The respondent makes what seems to us to be an equitable argument that,

"Since, taxwise, he (Ivan H. Greer) had already, *qua partner*, had full recoupment for his outlay made for the materials supplied to Brazoria, to accord him now an increased basis in his stock, measured by the value of those same materials, would realistically result in permitting him to recover twice, for tax purposes, his total outlay originally made and recouped in 1943 and 1944 by reason of the charge-off to the partnership's cost of goods sold."

If, prior to liquidation of Brazoria, Ivan had transferred his stock to a third person, it would be obvious to all that the treatment of the amount distributed to such third person in liquidation of Brazoria could not be affected by Ivan's prior conduct as partner. It seems almost as clear to us that § 115(c), supra, permits no consideration of that conduct in the treatment of the distribution to Ivan. We think that the tax statutes and regulations must be applied as written and

2. Brown Shoe Co. v. Commissioner, 339 U.S. 583, 70 S.Ct. 820, 94 L.Ed. 1081.

without any equitable consideration of the desirability of offsetting prior tax benefits.[3]

For the reasons stated, the decision of the Tax Court is

Reversed.

3. See the discussion by the Eighth Circuit in Reynolds v. Boos, 188 F.2d 322, 325, 326.