HARTLAND ASSOCIATES (A PARTNERSHIP) TRANSFEREE OF THE ASSETS OF HARTLAND HOSPITAL (A DISSOLVED CORPORATION), PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4713–67, 4714–67. Filed August 5, 1970.

*Sidney J. Matzner*, for the petitioner.
*Michael J. Christianson*, for the respondent.

1584

OPINION

The first issue to be decided is whether the cancellation by Rau, a creditor-shareholder of Hartland, of Hartland's interest indebtedness constituted taxable income to Hartland.

Section 61(a)(12), I.R.C. 1954, requires the inclusion in gross income of "Income from discharge of indebtedness." It is clear, however, that income resulting from such discharge is not in all cases taxable to the debtor. Where the cancellation is "gratuitous," that is, "a release of something for nothing," cancellation of a debt is regarded as a gift [2] and is thus excluded from gross income under section 102. *Helvering* v. *Amer. Dental Co.*, 318 U.S. 322 (1943); *George Hall Corporation*, 2 T.C. 146 (1943); *Utilities & Industries Corporation*, 41 T.C. 888 (1964), affd. on this ground but reversed on others sub nom. *South Bay Corporation* v. *Commissioner*, 345 F. 2d 698 (C.A. 2, 1965). Likewise, the gratuitous cancellation by a shareholder of a corporate indebtedness is regarded as a capital contribution rather than income to the corporation. Sec. 1.61–12(a), Income Tax Regs.; *Autostrop Safety Razor Co.*, 28 B.T.A. 621 (1933), affirmed on this point 74 F. 2d 226 (C.A. 2, 1934); *Lidgerwood Mfg. Co.* v. *Commissioner*, 229 F. 2d 241 (C.A. 2, 1956), affirming 22 T.C. 1152 (1954), certiorari denied 351 U.S. 951 (1956); *Carroll-McCreary Co.* v. *Commissioner*, 124 F. 2d 303 (C.A. 2, 1941); *Bratton* v. *Commissioner*, 217 F. 2d 486 (C.A. 6, 1954). Such cancellations are excludable from gross income under section 118.

The nontaxability of the gratuitous cancellation of an indebtedness applies equally to the principal and interest portions of the indebtedness. *Helvering* v. *Amer. Dental Co.*, *supra*; *George Hall Corporation*,

[2] As to the payment of gift tax, see *Stephen F. Heringer*, 21 T.C. 607 (1954), modified 235 F. 2d 149 (C.A. 9, 1956), certiorari denied 352 U.S. 927 (1956).

*supra; Commissioner* v. *Auto Strop Safety Razor Co., Inc.,* 74 F. 2d 226 (C.A. 2, 1934), affirming on this point 28 B.T.A. 621 (1933); *McConway & Torley Corporation,* 2 T.C. 593 (1943). It is of little consequence in determining the result of the cancellation of interest indebtedness that the interest had been deducted by the debtor in prior years. The imposition of tax liability on the basis of prior tax benefits has been uniformly rejected by the courts in the case of the gratuitous forgiveness of a debt.[3] *Reynolds* v. *Boos,* 188 F. 2d 322 (C.A. 8, 1951), citing *Helvering* v. *Amer. Dental Co., supra; Commissioner* v. *Auto Strop Safety Razor Co., supra.* Sections 102 and 118, which govern taxability of such cancellations, will not be overriden by the abstract notion of tax benefit.[4] *Reynolds* v. *Boos, supra.*

Applying the foregoing principles to the instant controversy, we concur with petitioner that the cancellation herein did not give rise to income. The gratuitous discharge of the overdue interest obligation of Hartland constituted, rather, a contribution to capital by Rau, its controlling shareholder. Notwithstanding respondent's contrary assertion, it appears quite clear from the record before us that the cancellation of interest was, in fact, gratuitous in that consideration did not pass between the corporation and Rau in return for the cancellation. The plain inference from the record is that Rau, who had at that time recently acquired a controlling interest in the corporation, intended, in discharging the outstanding interest indebtedness in the sum of $18,391, to thereby improve the deteriorating financial condition of the corporation. Requiring the payment of consideration would thus have frustrated the very purpose of such cancellation. Furthermore, petitioner has produced the contemporaneous handwritten letter of Rau, dated June 1, 1963, expressly stating that the unpaid interest "is hereby *gratuitously* waive[d]." (Emphasis added.) While Rau was unable to recall the execution of this letter, as respondent points out upon brief, its authenticity is unquestioned and its meaning quite clear. Petitioner's assertion respecting the absence of consideration, which might otherwise invite the particular scrutiny of the Court, is less so the object of concern where, as in the case before us, the cancellation is made by a controlling shareholder in favor of its ailing cor-

---

[3] The prior tax benefit may be of importance in determining the effect of a nongratuitous cancellation of interest or salary previously deducted by the debtor. In such cases, the recovery by reason of cancellation of amounts previously deducted has been held to result in income to the extent of any prior tax benefit. *Helvering* v. *Jane Holding Corporation,* 109 F. 2d 933 (C.A. 8, 1940).

[4] It is to be noted that as regards the issue under consideration the shoe is often on the other foot. The Commissioner has prevailed in his denial of a deduction for bad debt loss on the ground that such loss constituted a capital contribution. *Carl C. Harris,* 19 B.T.A. 895 (1930). Similarly, the Commissioner has successfully denied a deduction to a shareholder for a corporation's nonpayment of accrued salary which the shareholder had included in prior years. *Leo Perlman,* 27 T.C. 755 (1957), affd. 252 F. 2d 890 (C.A. 2, 1958).

poration. There is no evidence in the record to support his bare allegation that consideration passed between Rau and the corporation. On the state of the record, in view of the above-described circumstances, as well as the documentary evidence before us, we hold that the cancellation was, in fact, gratuitous. We thus consider any gain realized as a result of such cancellation properly excludable from gross income under section 118.

The next issue concerns respondent's denial of a deduction for rentals, accrued but allegedly unpaid, as of the close of the 2½-month period following Hartland's taxable year ended April 30, 1964.

Section 267(a)(2)[5] provides for the disallowance of certain accrued but unpaid expenses otherwise deductible under sections 162 or 212 where the taxpayer bears a specified relationship with the person to whom payment is to be made. Under this section, accrued expenses payable to a related person are deductible only if "paid" within the taxable year or the 2½-month period following the close thereof. Respondent has disallowed, under section 267, the portion of the claimed rental deduction attributable to rentals which had accrued in favor of Rau during Hartland's taxable year ended April 30, 1964, but which, respondent claims, remained unpaid as of July 15, 1964. The sole question presented is whether Hartland had "paid" its accrued rent, within the meaning of section 267, prior to July 15, 1964. Petitioner's contention in this regard is that the letter issued to Rau by Hartland on June 25, 1964, acknowledging the indebtedness for unpaid rent and setting forth a schedule of payment in installments, constituted payment within section 267(a)(2) of such rent. Petitioner maintains that the letter, which it characterizes as a promissory note, satisfied the payment requirement of the Code, citing *Musselman Hub-Brake Co. v. Commissioner*, 139 F. 2d 65 (C.A. 6, 1943); *Celina Manufacturing Co. v. Commissioner*, 142 F. 2d 449 (C.A. 6, 1944); *Anthony P. Miller, Inc.*, v. *Commissioner*, 164 F. 2d 268 (C.A. 3, 1947); *Akron Welding &*

---

[5] SEC. 267. LOSSES, EXPENSES, AND INTEREST WITH RESPECT TO TRANSACTIONS BETWEEN RELATED TAXPAYERS.

(a) DEDUCTIONS DISALLOWED.—No deduction shall be allowed—

\* \* \* \* \* \*

(2) UNPAID EXPENSES AND INTEREST.—In respect of expenses, otherwise deductible under section 162 or 212, or of interest, otherwise deductible under section 163,—

(A) If within the period consisting of the taxable year of the taxpayer and 2½-months after the close thereof (i) such expenses or interest are not paid, and (ii) the amount thereof is not includible in the gross income of the person to whom the payment is to be made; and

(B) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and

(C) If, at the close of the taxable year of the taxpayer or at any time within 2½-months thereafter, both the taxpayer and the person to whom the payment is to be made are persons specified within any one of the paragraphs of subsection (b).

*Spring Co.*, 10 T.C. 715 (1948); and *Heatbath Corporation*, 14 T.C. 332 (1950).

The petitioner correctly states that issuance of a promissory note may constitute payment for purposes of section 267. For reasons hereinafter stated, this proposition must, in our opinion, be limited to the issuance of a negotiable note, as against either a nonnegotiable note or mere contractual obligation.[6] The term "paid" of section 267 comprehends transactions which, as in the case of cash payments, result in the receipt of income by a cash basis taxpayer. Sec. 1.267(a)–1(b)(1)(iii), Income Tax Regs.; *Musselman Hub-Brake Co. v. Commissioner, supra.* This principle follows from the general purpose of section 267 which is to deny a deduction to an accrual method taxpayer for amounts which, because of the absence of actual payment, are not includable in the income of the cash basis taxpayer in whose favor such amount is accrued. In determining whether the payment requirement has been met, therefore, the focal point of inquiry is the includability of the payment in question in the income of a cash basis taxpayer.

As a general rule, negotiable promissory notes issued as payment to a cash basis taxpayer result in the receipt of income. *Joseph Marcello, Jr.*, 43 T.C. 168 (1964), remanded on other grounds 380 F. 2d 499 (C.A. 5, 1967); *Alvin B. Lowe*, 44 T.C. 363, 372 (1965), acq. 1966–1 C.B. 2; *Wolfson v. Reinecke*, 72 F. 2d 59 (C.A. 7, 1934). Such obligations are regarded as the "equivalent of cash" because, like money, they are freely and easily negotiable so that they pass from hand to hand in commerce. *Nina J. Ennis*, 17 T.C. 465, 470 (1951). On the other hand, a mere contractual obligation to make payments in the future is not treated as a cash equivalent and hence is not includable in income of a cash basis taxpayer until payment thereunder is actually received. *Dudley T. Humphrey*, 32 B.T.A. 280 (1935); *Bedell v. Commission*, 30 F. 2d 622 (C.A. 2, 1929), affirming 9 B.T.A. 270 (1927); *Harold W. Johnston*, 14 T.C. 560 (1950). Similarly, because they lack negotiability, nonnegotiable notes are not normally the equivalent of cash. *Nina J. Ennis, supra; Denver & Rio Grande Western Railroad Co. v. United States*, 318 F. 2d 922 (Ct. Cl. 1963).

Petitioner, without discussing the negotiability of the letter in question, asserts categorically that such letter, though not in the usual form, constituted a promissory note. It is the negotiable aspect of such instrument which, as we have stated above, is crucial to the outcome of this case. The mere fact that Rau may have considered the instrument a negotiable note, which is not entirely clear from the

---

[6] It is to be noted that the cases cited by petitioner all involve the issuance of a negotiable promissory note.

record, would not alone accord it negotiable status as petitioner implies. *Ornbaun* v. *First Nat. Bank of Cloverdale*, 215 Cal. 72, 8 P. 2d 470 (1932); *Westlake Mercantile Finance Corporation* v. *Merritt*, 204 Cal. 673, 269 P. 620 (1928). Looking to the face of the instrument in question, we think it quite clear that such instrument is nonnegotiable under California law, which provides:

§ 3082. Form and requisites.
An instrument to be negotiable must conform to the following requirements:
(1) It must be in writing and signed by the maker or drawer;
(2) Must contain an unconditional promise or order to pay a sum certain in money;
(3) Must be payable on demand, or at a fixed or determinable future time;
(4) Must be payable to order or to bearer; * * *

\* \* \* \* \* \* \*

[Cal. Civ Code, sec. 3082, p. 448 (West 1954).]

The instrument in the instant case contains no express promise to pay as required by section 3082(2) above. Although such promise to pay may be inferred from the acknowledgement of a debt for the purpose of characterizing the instrument as a promissory note, the law of California seems to require, for *negotiability*, more than a mere implied promise to pay. *Patterson* v. *Chapman*, 179 Cal. 203, 176 P. 37 (1918); 11 Am. Jur. 2d secs. 139, 140; 127 A.L.R. 654. Moreover, it is clear that the absence of the required words of negotiability (see sec. 3082(4) above), deprives the instrument in question of negotiability. An indispensible element of the negotiable instrument under the statute is that it be "payable to order or bearer." Failing this explicit requirement, the instrument in question must be characterized as nonnegotiable under California law. *Guggenhime & Co.* v. *Lamantia*, 207 Cal. 96, 276 P. 995 (1929).

Accordingly, the letter in question, which constituted either a contract for future payment or a nonnegotiable promissory note, was not required to be included in the income of Rau for the taxable year 1964. Indeed, Rau did not in fact report amounts represented by such letter on his Federal income tax return for such year. By the same token, such letter cannot, we think, be regarded as payment within the meaning of section 267.

Moreover, to the extent that the parties' subjective intent to liquidate the indebtedness by the issuance of a promissory note plays a role in determining the effect of such payment, see *Musselman Hub-Brake Co.* v. *Commissioner, supra* at 69; *Akron Welding & Spring Co., supra* at 721, the facts of the instant case further reinforce our conclusion. Hartland upon issuance of the letter made no entries upon its books of account indicating the payment of its rental obligations to Rau at such time. The accrued rent payable account continued to

show after June 25, 1964, a balance in excess of $68,785.07 which included the amounts represented by the letter of June 25. Common accounting procedures would have required the debiting of this account and crediting of a note payable account had Hartland regarded the issuance of the letter as full payment of its outstanding rent obligation. Nor did Rau, the principal shareholder and an officer of Hartland, regard the letter as payment, as evidenced by his failure to include the amount thereof in gross income upon its receipt. Moreover, the language of the letter, which conveys the impression of an agreement rather than a negotiable evidence of indebtedness, is significant in ascertaining the intent of the parties to the transaction. It appears that the purpose of such document was primarily to set forth the terms of payment and secondarily evidence the existing indebtedness owed by Hartland to Rau, rather than to create a negotiable instrument.

Accordingly, we uphold the Commissioner's partial denial of the rental deduction to Hartland for the taxable years at issue.

*Decisions will be entered under Rule 50.*