T.C. Memo. 1997-316

UNITED STATES TAX COURT

FRANK PETAR CONTRACTING, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21936-94.                    Filed July 9, 1997.

Frank Petar (an officer), for petitioner.

<u>Carmino J. Santaniello, Jr.</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BEGHE, <u>Judge</u>:  Respondent determined a deficiency in
petitioner's Federal income tax for the fiscal year ended May 31,
1990 (FYE 5/31/90) in the amount of $38,164.  The sole issue for
decision is whether petitioner is entitled to deduct for the
taxable year in issue an accrued bonus awarded to its president

and sole shareholder.[1]  Resolution of this issue turns on the factual question of whether petitioner issued a promissory note in payment of the bonus during the taxable year.  Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the taxable year in issue; all Rule references are to the Tax Court Rules of Practice and Procedure.

                          FINDINGS OF FACT

     Some of the facts have been stipulated and are so found.  The stipulations of fact and attached exhibits are incorporated by this reference.  Petitioner is a construction company incorporated in 1987 under the laws of the State of New York.  At the time the petition was filed, petitioner maintained its principal place of business in Ballston Spa, New York.  Frank Petar (Mr. Petar) has been petitioner's sole shareholder, president, and one of two members of the board of directors since the company's incorporation.  His wife, Franka Petar (Mrs. Petar), is the other member of the board of directors and the corporate secretary.  Thomas Cunniff (Mr. Cunniff) has at all times served as petitioner's accountant and tax return preparer.  For all relevant years, petitioner computed its income for book

---

[1] The $38,164 deficiency for FYE 5/31/90 is entirely attributable to the disallowance of the bonus deduction. Respondent has allowed the deduction for the following taxable year, as a result of which the deficiency is partly offset by an overpayment for that year and, by reason of the carryback of a net operating loss, by overpayments in 2 earlier years.

and tax purposes on the basis of a fiscal year ending May 31 using the accrual method of accounting.

Sometime in the middle of May 1990, Messrs. Cunniff and Petar met for the purpose of reviewing petitioner's results for the taxable year. At this meeting it was decided that petitioner would award Mr. Petar a bonus of $100,000 in consideration of his extraordinary efforts and the company's favorable performance for the year. The bonus was accrued on petitioner's books for FYE 5/31/90. For cash-flow reasons Mr. Petar wanted to postpone actual payment until some time in the next fiscal year. Mr. Cunniff advised him that in order for petitioner to claim a deduction for the accrued bonus for FYE 5/31/90, payment would have to be made by August 15, 2-1/2 months following the close of the taxable year. In accordance with its accountant's advice, petitioner issued Mr. Petar a check for $100,000 on August 14, 1990. In prior years bonuses had always either been paid in cash by the end of the fiscal year or accrued and paid in cash within 2-1/2 months of the fiscal yearend. In no prior year in which actual payment of a bonus was deferred had petitioner issued a note evidencing the accrued liability.

On its Federal income tax return (Form 1120) for FYE 5/31/90, petitioner claimed a deduction for compensation of officers in the total amount of $169,800, which included the $100,000 bonus awarded to Mr. Petar. Mr. Petar reported the

bonus on his individual income tax return (Form 1040) for the 1990 calendar year.

In March 1993 Revenue Agent Mockus began an examination of petitioner's tax return for FYE 5/31/90. Mr. Cunniff represented petitioner in three meetings with the revenue agent in March, April, and August 1993. The treatment of the bonus was among the issues discussed at the initial meeting. Mr. Mockus informed Mr. Cunniff that under section 267(a)(2), as amended, petitioner would have been entitled to deduct the bonus for FYE 5/31/90 only if it paid the bonus before the close of that year. Mr. Cunniff admitted that both he and Mr. Petar had mistakenly believed that under the circumstances the law still permitted compensation to be deducted for the year accrued so long as payment was made within 2-1/2 months after the close of the year. Following the initial meeting Mr. Mockus mailed to Mr. Cunniff photocopies of the relevant provisions of the statute and regulations together with the explanatory comments and annotations published in the Standard Federal Tax Reports (CCH). These materials addressed the issue of whether a promissory note qualified as payment for purposes of section 267(a)(2).

At the second meeting Mr. Cunniff and Mr. Mockus discussed further the revenue agent's proposed disallowance of the bonus deduction, but did not reach agreement. Mr. Cunniff agreed to all other proposed adjustments. A third meeting, which Mr. Petar

also attended, was held for the purpose of ensuring review of all relevant documents and consideration of all relevant facts in a final effort to settle the bonus issue.  For reasons that are not evident from the record, petitioner's representatives continued to dispute the proposed disallowance of the bonus deduction for FYE 5/31/90.  In November 1993 the case was closed to Appeals. At no time during the 8- to 9-month examination did petitioner's representatives inform the Internal Revenue Service that petitioner had issued Mr. Petar a note evidencing the bonus award during FYE 5/31/90.  No corporate documents examined by the Internal Revenue Service revealed the existence of such a note. Although the revenue agent specifically requested petitioner's corporate minute book, it was never shown to him.

In the petition, filed on November 23, 1994, petitioner set forth its objection to respondent's determination as follows:

> We disagree with the salary bonus of $100,000.00
> accrued on our books [for] FYE 5-31-90 being
> disallowed.

*   *   *   *   *   *   *

> because we took all necessary steps to make the
> deduction proper as follows:
> 1- Took Promissory Note between Frank Petar Contracting
> Inc. & Frank Petar on 5-23-1990.
> 2- Reflected income on Frank Petar Form 1040 for 1990.
> 3- Performed services by Frank Petar for this
> remuneration during FYE 5-23-90.

OPINION

Section 267(a)(2) limits the deductibility of a business expense payable to a related person if the amount is not

currently includable in gross income under the payee's method of accounting. Prior to its amendment as part of the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 174(a)(1), 98 Stat. 704, the section operated to deny an accrual basis taxpayer a current deduction for accrued business expenses payable to a related cash basis taxpayer unless payment was made within 2-1/2 months after the close of the taxable year. Under the law in effect for the taxable year in issue, deduction of the accrued expenses is not allowable until paid to the related cash basis taxpayer. See Tate & Lyle, Inc. v. Commissioner, 103 T.C. 656, 659-661 (1994), revd. and remanded on other grounds 87 F.3d 99 (3d Cir. 1996); H. Rept. 98-861, at 1032-1033 (1984), 1984-3 C.B. (Vol. 2) 1, 286-287. A corporation and an individual who owns more than 50 percent of its stock are related parties within the meaning of section 267(a)(2). Sec. 267(b)(2). An expense is considered paid for purposes of this section to the extent of the fair market value of any negotiable note received in payment of the expense. Musselman Hub-Brake Co. v. Commissioner, 139 F.2d 65 (6th Cir. 1943); Hartland Associates v. Commissioner, 54 T.C. 1580, 1587-1588 (1970); cf. Don E. Williams Co. v. Commissioner, 429 U.S. 569, 579-583 (1977); sec. 1.267(a)-1(b)(3), Income Tax Regs.

The parties agree that section 267(a)(2) governs the deductibility of the bonus awarded to Mr. Petar during FYE 5/31/90. In support of the claimed deduction petitioner produced

a reproduction of a handwritten document entitled "Promissory Note" and dated May 23, 1990, acknowledging petitioner's obligation, on or before August 15, 1990, to pay Mr. Petar $100,000 for services performed during the fiscal year (the Note). Petitioner presented the testimony of Mrs. Petar and her daughter Sonya to establish the authenticity of the Note. These witnesses testified that they drafted the Note in accordance with Mr. Cunniff's instructions while Mr. Petar was temporarily living at a construction site out of town, and that Mrs. Petar delivered the Note to Mr. Petar for execution on petitioner's behalf about 2 or 3 days later. Sonya had no clear recollection of when the events she described occurred. According to Mrs. Petar, they occurred at some time during the last week of May 1990, consistent with the date shown on the Note. There were inconsistences in Mrs. Petar's account that appeared to be attributable to language comprehension problems.

Both Mrs. Petar and Mr. Cunniff testified that it was Mr. Petar who originally identified the need for the Note. When Mr. Petar was asked to explain the circumstances requiring the issuance of the Note, his initial response was that he would prefer to let his accountant explain. After the Court encouraged him to testify on the subject, he testified that, at the time the bonus was awarded to him, the company needed to conserve its cash balances pending collection of unpaid accounts from third parties.

Although petitioner's cash-flow concerns may explain why the bonus was not paid in cash during FYE 5/31/90, they do not explain why petitioner allegedly took the unprecedented step of issuing a note to Mr. Petar evidencing the deferred payment obligation. In the following colloquy with the Court and Mr. Cunniff, who was seated in the courtroom during Mr. Petar's testimony, Mr. Petar was given another opportunity to address this crucial issue:

> The Court: Okay. Is there anything else that I ought to be aware of that you want to tell me?
>
> Mr. Cunniff: Why the note was made out in the first place, Frank.
>
> The Witness: We made the note out for different other reasons, you know. We needed some performance bonds for the -- you know, for the bank and things like that.
>
> Mr. Cunniff: The reason it ended up being made out was because we showed on your personal return, your personal financial statement, $100,000 owed to you and they wanted to know why that was so you could go through the bonding company, so that's why -- that is actually the reason why we made the note up. We didn't make it up for this thing at all. It happened to come out all right.
>
> The Court: Anything else?
>
> Mr. Cunniff: Go ahead, tell him that.
>
> The Witness: I think that is all, Your Honor, I have.

In his own testimony, Mr. Cunniff elaborated on the account he had tried to elicit from Mr. Petar by means of his prompting from the audience. According to Mr. Cunniff, the Note was not issued before the close of FYE 5/31/90 for the purpose of

supporting a tax deduction for that year.  Both he and Mr. Petar

had believed that payment by check within 2-1/2 months, as

planned, would be sufficient for that purpose.  In Mr. Cunniff's

view, it was just a fortunate coincidence that petitioner issued

the Note in time to qualify for a deduction for FYE 5/31/90.

> The Witness:  * * * The note came about because back
> in, I don't know when, it was -- I think it was tax
> season still * * * Mr. Petar needed some bonding, okay,
> performance bonds, because he has his own personal land
> over there that he was going to put a project in on.
> What happened is that we met sometime early in May when
> we did this.  At the time Frank told me he needed a
> financial statement, his personal financial statement,
> because of the bonding company.  I think it was Aetna
> or whatever.  Okay.
>
> So I made him up a personal statement.  On the
> statement I showed a receivable on his asset statement
> of $100,000.  Frank and I talked, and when this
> occurred, Frank had called me and said after I gave him
> this statement that we should show something in the way
> of substantiating this because -- I guess -- I have
> never gone through bonding myself but I guess they ask
> you everything on your thing, they want to know, you
> know, where this came from and everything.
>
> *    *    *    *    *    *    *
>
> * * * we drafted up this note just for something to
> send with this financial statement to show that there
> was a $100,000 asset that was actually due and payable
> to Frank very shortly.
>
> *    *    *    *    *    *    *
>
> The Court:  Now why would Mr. Petar get personal
> bonding if he was doing business as the corporation?
>
> The Witness:  Because this is -- this is personal
> property that he owned.  This wasn't land in the
> corporation.

The Court:  So was he -- in order -- I take it that it was the corporation that was being bonded and he was guaranteeing the bond?

The Witness:  I guess.  Isn't that -- well, I can't talk to him, I guess, but I believe, you know, it is the old story when you got such a closely-held corporation, it is all one entity, almost.

The Court:  Let me ask you, do you have any -- do you have the financial statement that you have just mentioned?  That is, is it part of Mr. Petar's records?

The Witness:  No.

The Court:  What happened to it?  It just would be --

The Witness:  I might have it somewhere.  I think the reason we don't have this is because we really -- as I say, this note in the beginning is not something that we were really aware of.

The Court:  When you say you weren't aware of it?

The Witness:  Aware of why -- we weren't aware of the reason, that this note would become so important.  This note just happened because of certain things that happened, okay?

The Court:  So you are saying that --

The Witness:   Our timing was good, I am saying.

*   *   *   *   *   *   *

The Court:  But we -- you don't actually have the documentation that would support and describe the circumstances surrounding that other situation?

The Witness:  No, Your Honor.

The Court:  That is, correspondence with the bonding company?

The Witness:  No, I have nothing on that.

The Court:  Okay.  Have you asked Mr. Petar whether he has anything of that sort?

The Witness:  I have not, no.

The notice of deficiency was issued before petitioner advised respondent of the existence of the Note.  The parties agree that if the Note was in fact issued to Mr. Petar before the close of FYE 5/31/90, then respondent's disallowance of the bonus deduction for FYE 5/31/90 was erroneous.  Petitioner bears the burden of proof.  Rule 142(a).

Petitioner relies on the aforementioned testimony of Mr. Petar and his family and petitioner's accountant.  There is no evidence in the record that directly contradicts their account.  Although this Court will not discount uncontradicted testimony on behalf of the taxpayer merely because it is self-serving, the testimony will not satisfy the taxpayer's burden if it is improbable, unreasonable, or questionable.  Cf. Loesch & Green Constr. Co. v. Commissioner, 211 F.2d 210, 212 (6th Cir. 1954), revg. and remanding a Memorandum Opinion of this Court dated Dec. 11, 1952, with Conti v. Commissioner, 39 F.3d 658, 664 (6th Cir. 1994), affg. and remanding 99 T.C. 370 (1992); Lerch v. Commissioner, 877 F.2d 624, 631 (7th Cir. 1989), affg. T.C. Memo. 1987-295; Commissioner v. Smith, 285 F.2d 91, 96 (5th Cir. 1960), affg. Griffin v. Commissioner, T.C. Memo. 1958-210. We find the witnesses' account of the Note to be unpersuasive for several reasons.

First, the witnesses failed to provide a reasonably complete and coherent explanation of the purpose that the Note was designed to serve. Mr. Petar, the person who by all accounts was in the best position to explain, recalled only after prompting from his accountant that the Note was prepared because "we needed some performance bonds". He made no attempt to clarify the connection between the Note and the bonds or who it was that needed them. Nor was Mr. Cunniff able to shed much additional light on these matters. After explaining that Mr. Petar needed a promissory note to substantiate a personal financial statement and that a financial statement was needed to secure performance bonds, he proved utterly confused as to the reasons why Mr. Petar needed performance bonds.

Second, petitioner's failure to offer in evidence any documentation corroborating the witnesses' explanation of the Note raises doubts about its authenticity. Mr. Cunniff's testimony that the Note was the only extant document relating to the bonding transaction of which he was aware is implausible. Assuming that the Note was in fact prepared during FYE 5/31/90, it would not have been retained after 1990 as evidence of petitioner's indebtedness, because the debt was paid on August 14, 1990. Nor would it have been retained for tax purposes, if credit is given to the testimony that neither Mr. Petar nor Mr. Cunniff realized the Note's significance for tax purposes until some time during or after the audit, years

later.  In all likelihood, the Note would only have been retained as a record of the bonding transaction.  Yet, if the Note had been retained as such, it is only reasonable to suppose that other more important records of that transaction would also have been retained, and it seems unlikely that these other records would have been overlooked when the Note was discovered in preparation for this litigation.  We find further reason for skepticism in Mr. Cunniff's testimony that he did not consult Mr. Petar regarding the existence of other documents relating to the bonding transaction.  Assuming that the Note was in fact prepared to satisfy bonding requirements, any such documents would obviously have been useful to refresh their recollection of the bonding transaction and surely they would have discussed any such documents in preparation for trial.

Third, the witnesses' account of the Note is difficult to reconcile with their conduct during the audit.  If the Note is genuine, then the only explanation for the failure of Messrs. Cunniff and Mr. Petar to call its existence to the attention of the revenue agent during the audit is, as Mr. Cunniff testified, that they did not at that time realize the significance of the Note in relation to the deductibility of the bonus.  Although the reading material they received from the revenue agent should have alerted them to the Note's significance, it is conceivable that they did not read it carefully.  However, if they did not become aware of the significance of the Note for tax purposes until

after the audit, then, based on the governing law and the relevant facts <u>as Mr. Cunniff and Mr. Petar understood them after the initial meeting with the revenue agent</u>, they would have had no grounds for defending petitioner's return position in good faith. They conceded all other proposed adjustments. No reason appears why they contested the proposed disallowance of the bonus deduction.

The behavior of Mr. Cunniff and Mr. Petar during the audit would make more sense if the Note was prepared only after they learned from the revenue agent that issuance of a promissory note during the taxable year in issue would have legitimized the deduction. For tactical reasons they might well have chosen not to reveal the Note's existence until after the audit concluded and a notice of deficiency was issued, in order to avoid a thorough investigation of the Note's authenticity. In this connection, the unexplained failure of petitioner's representatives to comply with Revenue Agent Mockus' request for petitioner's corporate minute book is significant. Mr. Mockus testified that, in his experience, when a corporation issues a note to a shareholder, generally the transaction is recorded in the corporate minute book. Absent any explanation or evidence to the contrary, we cannot rule out the possibility that the minute book was deliberately withheld in order to conceal the fact that no promissory note had been issued during FYE 5/31/90.

For the aforesaid reasons, the evidence does not persuade us that petitioner paid the accrued bonus by means of a promissory note before the close of the taxable year in issue.  Petitioner has not satisfied its burden of proof.  We therefore sustain respondent's disallowance of the deduction.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.